**CALIFORNIA APPAREL CREATORS et al. v. WIEDER OF CALIFORNIA, Inc., et al.**

District Court, S. D. New York.
May 16, 1946.

Max Feingold, of Los Angeles, Cal., and Ezra Grossman, of New York City, for plaintiffs.

Katz & Heimowitz, of New York City, for Wieder of California, Inc.

Henry Schuman, of New York City, for California Sportswear, Inc.

Lauterstein, Spiller, Bergerman & Dannett, of New York City (Leon Lauterstein, Lincoln W. Lauterstein, and Richard L. Freund, all of New York City, of counsel), for Cortley Shirt Co., Inc.

Robert W. Kenny, Atty. Gen., of California, and Hartwell H. Linney, Chief

Asst. Atty. Gen., amicus curiae in behalf of plaintiffs.

LEIBELL, District Judge.

This action for unfair competition was commenced December 4, 1945, by seventy-six named plaintiffs, manufacturers of various types of men's, women's and children's wearing apparel and accessories, and all having their place of business in the State of California, against three named defendants, viz., Wieder of California, Inc., California Sportswear, Inc., and the Cortley Shirt Company, Inc. (the last labeling some of its articles "Californian Sportswear"), manufacturers of wearing apparel and having their place of business in New York. The first named plaintiff appears to be a non-profit membership corporation, organized in California, of which seventeen associations of wearing apparel manufacturers and their respective members are alleged to be members. The complaint states:

"II. That the party-plaintiffs are manufacturers of various types of men's, women's and children's wearing apparel; that the plaintiffs all have their factories and places of business within the State of California; that in this action the party-plaintiffs are appearing and prosecuting this action not only for themselves but for all other manufacturers of men's, women's and children's wearing apparel, whose places of manufacture are located in the State of California, and who would be similarly affected as party-plaintiffs when, by the result of this action, and as to whom there is a common question of law and fact affecting their rights in the same manner as the rights of the party-plaintiffs, would be affected and for whom the party-plaintiffs seek the same common relief as the party-plaintiffs seek herein for themselves. Throughout this pleading and all subsequent pleadings in this action, wherever the word or phrase 'plaintiffs' is used it is intended that such word or phrase shall indicate not only the names of party-plaintiffs herein, but all other manufacturers of men's, women's and children's wearing apparel who manufacture their products within the State of California."

"XII. Plaintiff, California Apparel Creators, is a non-profit corporation, duly organized under the laws of the State of California, and of which corporation seventeen associations of wearing apparel manufacturers and their respective members are members. The above associations are composed in the aggregate of hundreds of firms manufacturing wearing apparel within the metropolitan area of the County of Los Angeles, California; that the member firms sell wearing apparel throughout the entire United States, and indicate in their advertising, labels and by other means of publicity, that the origin of their products is the State of California; that California Apparel Creators has spent and is spending throughout the United States many thousands of dollars per year in magazine and trade advertising, store displays, and other media of communications, for the purpose of creating additional consumer demand for wearing apparel manufactured and styled in California by plaintiffs."

It is the contention of plaintiffs that this is a proper class action under Rule 23(a) (3), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. I doubt that it is even a spurious class action. Only some of the named plaintiffs are engaged in the business of manufacturing and distributing the same or similar types of styles of men's, women's and children's wearing apparel as are manufactured or sold by the defendants. The defendant, Wieder of California, Inc., manufactures ladies' coats and suits; California Sportswear, Inc., manufactures and sells women's sportswear and beachwear, consisting of skirts made out of rayon and woolen fabrics, and slacks, halters, midriffs and shorts made out of rayon and cotton fabrics; Cortley Shirt Company, Inc., manufactures men's and boy's wearing apparel, principally sportswear. This is an action for unfair competition.

In his affidavit of January 23, 1946, Samuel Wieder discusses the wide variety of articles manufactured or sold by the various plaintiffs. Wieder states:

"In truth, it can be said that many of the plaintiffs in this action are manufacturing and selling goods as different from

defendant's as ski togs are from cotton skirts. I have been advised that to establish a case of unfair competition, there must be shown a wrongful, fraudulent and actual intention to deceive the public by causing it to believe that the goods of one party are the goods of another. While on this subject, let us look into the identity of the respective plaintiffs herein. Examination of this heterogeneous group will show that they have no community of interest herein, whatever. Many of the firms, forming the main plaintiffs are not even in the same trade with the defendant. Their enterprises range from corsets and brassieres, garter belts and girdles to neckwear, costume jewelry and millinery. It is only logical to conclude therefore, that a class action such as this is, cannot be maintained, if only for the reason, that the firms constituting said plaintiffs have a widely divergent business background, and not in any way identifiable with that of the defendant."

An examination of the 1946 booklet published by California Apparel Creators (a plaintiff) and Associated Apparel Manufacturers of Los Angeles confirms that statement.

There is a serious doubt as to the truth of the allegations concerning the similarity of the businesses conducted by many of the plaintiffs to that of the named defendants, but since I propose to base my decision of this case on certain broad fundamental legal principles I need not further consider the question of the propriety of a class action herein. It may be that at least some of the plaintiffs may join to bring this action under Rule 20(a), F.R.C.P., as was done before that Rule in Pillsbury-Washburn Flour-Mills Co. v. Eagle, 7 Cir., 86 F. 608, 41 L.R.A. 162, and Harvey v. American Coal Co., 7 Cir., 50 F.2d 832. For a discussion of Rule 23(a)(3) and Rule 20, see Oppenheimer v. F. J. Young & Co., 2 Cir., 144 F.2d 387 and Moore's Federal Practice.

■ The long list of plaintiffs reveals that in California, as elsewhere, no one company or corporation has any right to the exclusive use of the word "Sportswear" in its business name or title. Twelve of the plaintiffs have thus used the word "Sportswear." There does not seem to have been any limitation in California on the use of the adjective "California" in a business name; three of the plaintiffs so use it. The same is true as to the phrase "Of California"; nine of the plaintiffs use that phrase in their business name or title. The 1946 booklet of "California Spring Fashions," issued by California Apparel Creators (one of the plaintiffs) and Associated Apparel Manufacturers of Los Angeles, contains dozens of names of other business concerns using in some way or other the word "California" in their business title (Ex. H annexed to Samuel Wieder's affidavit of January 23, 1946). Apparently there is no complaint among the plaintiffs themselves over the use of the word "California" or the phrase "Of California" in their business names, but they do complain if any manufacturer of garments, wearing apparel or accessories located outside the boundaries of the State of California makes any such use.

■ The present suit is brought against the three named defendants, manufacturers located in New York City and against twenty "Doe" defendants listed as "One Doe," "Two Doe," etc., down to and inclusive of "Twenty Doe." No one of the "Does" was ever served either under the fictitious designation or under the true name of the prospective defendant. Two of the named defendants have the word "California" in their business name; the third, Cortley Shirt Company, Inc., uses the words "Californian Sportswear" on its garment label. As to the labels, none of the plaintiffs can claim any exclusive right to the use of a palm tree, the sun, a cactus plant, or a mission church either on a label or in its advertising. In the many California labels attached to Exhibit "C" annexed to the complaint ten show palm trees, three the cactus, two the sun, one a mission church. Of course, other states of the Union have palm trees; some have cactus plants; a few, mission churches; and on all of them the sun shines at some season of the year, with varying degrees of brilliancy and healthfulness. California has all of these, but that would not prevent manufacturers in other states from using some or all of them on a label (Wied-

er's label shows all) if no confusion resulted from a general similarity.

Wieder of California, Inc., has been incorporated since June 26, 1944; Cortley Shirt Company, Inc., was organized in May 1923 and has been using the brand or style name "Californian" since February 1938. California Sportswear, Inc., was organized as a corporation under the laws of New York, July 23, 1940.

The complaint prays for a preliminary and a permanent injunction against the defendants' use of the words "California" and "Californian" in their titles, labels, or advertising; for an accounting; and for damages in the sum of one million dollars.

The broad and basic question in this case, as Mr. Cole states in a reply affidavit for plaintiffs, rests on the use of the word "California." Do persons engaged in manufacturing wearing apparel in the State of California have a proprietary right to the use of the word "California" in their business names or on their merchandise? Should apparel manufacturers located outside the State of California be barred from the use of the word "California" in their trade names, on garment labels and tags, or in advertising matter? I believe that both questions should be answered in the negative.

Defendants have moved for summary judgment under Rule 56, F.R.C.P., dismissing the action and for a declaratory judgment. Cortley Shirt Company, Inc., seeks a judgment declaring as against the named plaintiffs that the said defendant is entitled to use the label mentioned in the complaint and the word "Californian" in connection with sportswear sold by it. The defendants, Wieder of California, Inc., and California Sportswear, Inc., ask for a similar declaratory judgment in their favor. The questions presented by the defendants' motions are practically the same as those involved in plaintiffs' motion for a preliminary injunction.

Plaintiffs assert a proprietary right in the use of the words "California" and "Californian" and also urge that those words have acquired a secondary meaning in the garment industry by virtue of that fact that California manufacturers have ex-

pended large sums in advertising their wares; that they have developed a unique styling superior in design and quality, characteristic of wearing apparel styled and produced in California; and that they have created a market for California manufactured clothing.

Paragraphs IX, XI and XIII of the complaint alleges:—

"IX. Wearing apparel manufactured by the plaintiffs bear labels, and such labels bear phrases such as 'Made in California', 'Produced in California', 'Styled in California', and other phrases indicating that the origin of the wearing apparel is the State of California. Attached hereto and marked Exhibit 'C' are facsimiles of some of the labels being used by some of the plaintiffs."

"XI. That as a result of the activities of the plaintiffs and the expenditure of many millions of dollars over a long period of time, the purchasing public throughout the entire United States and in the State of New York has associated well-styled and well manufactured wearing apparel with the phrases 'Made in California' or 'Styled in California'; or 'Created in California,' or 'Californian', or such other phrases and slogans, using the word 'California' to indicate the origin of said wearing apparel."

"XIII. Due to the tremendous effect upon the purchasing public of the constant advertising and the publicizing of the wearing apparel manufactured in California by plaintiffs, and the consistent presentations to the buying public of the styling, workmanship and color of California produced merchandise through radio, newspapers, fan magazines, movies, store advertisements, window displays, and other means, the word 'CALIFORNIA' has acquired a secondary meaning in the minds of the purchasing public to denote wearing apparel of fine styling, good workmanship, originality and color, and has created in the minds of the purchasing public a desire to purchase and repurchase wearing apparel styled and manufactured in California in great and ever increasing quantities."

The plaintiff manufacturers could not acquire a valid trade-mark right in the word "California" because it comes "under

the general rule that the word or words, in common use as designating locality, or section of a country, cannot be appropriated by any one as his exclusive trademark." Columbia Mill Co. v. Alcorn, 150 U.S. 460, at page 464, 14 S.Ct. 151, at page 152, 37 L. Ed. 1144. Standing alone it is a geographic name and has not been adopted by the California manufacturers arbitrarily but rather as descriptive either of origin, quality, or style. It has sometimes been maintained that a geographic name can become vested with the rights of a common law trademark but this is true only where the name is fancifully or arbitrarily used and not when it is used to designate origin or description. Scandinavia Belting Co. v. Asbestos & Rubber Works, 2 Cir., 1919, 257 F. 937. Relief against another's use of a geographic name applied to an article manufactured or sold by a plaintiff must be sought on the ground that the word has acquired a secondary signification; and the use by another is restrained on the principles of unfair competition, and not on the principles underlying the narrower field of trademark infringement. Elgin Nat. Watch Co. v. Illinois Watch Co., 179 U.S. 665, 21 S.Ct. 270, 45 L.Ed. 365; Butterfield & Co. v. Abraham & Straus, 212 App.Div. 384, 208 N.Y.S. 740, affirmed 241 N.Y. 560, 150 N.E. 555. Underlying practically all the cases where practices amounting to unfair competition have been restrained, we find the passing off of the goods of one manufacturer as those of a competitor to the deception of the purchaser and the damage of the competitor.

■ Some of the plaintiffs manufacture in California wearing apparel and accessories for men, women and children, and their market has been national in scope. The three named defendants manufactured certain types of wearing apparel in New York and their market is likewise national. It is probable that defendants are in competition with some of the plaintiffs who manufacture similar garments. No similarity in names has been shown, except as between the plaintiff, California Sportswear Company, and the defendant, California Sportswear, Inc. If in addition to the use of the word "California" there were some proof that any defendant was palming off its manufactured wearing apparel as the product of any of the plaintiffs, the use of the word "California" by any such defendant would be enjoined, because it would be a misuse calculated to deceive. Eastern Const. Co. v. Eastern Engineering Co., 246 N.Y. 459, at page 463, 159 N.E. 397.

■ The defendant Cortley at one time used a label that was somewhat similar to that used by one of the plaintiffs, California Sportswear Company, but prior to the commencement of this action the label of Cortley was changed in a manner suggested by California Sportswear Company, so that it now clearly indicates that the article is manufactured by Cortley in New York, and the California Sportswear Company was promptly advised of the change. If California Sportswear Company has any claim for misuse of its label against Cortley Shirt Company, Inc., or on its name against California Sportswear, Inc. (American Steel Foundries v. Robertson, 269 U.S. 372 at page 381, 46 S.Ct. 160, 70 L.Ed. 317; S. C. Johnson & Son v. Johnson, 2 Cir., 116 F.2d 427; Bond Stores, Inc., v. Bond Stores, Inc., 3 Cir., 104 F.2d 124), those issues can be separately tried herein under Rule 20(b), F.R.C.P.

■ It is argued that the use of the name "California" by the defendants should be prohibited because the word indicates the origin of the manufactured article, and that only California manufacturers are at liberty to use the word. Plaintiffs' attorney advances the proposition that "of two users of a geographic term, the one located in that geographic area could restrain the other not located in that area". The word "California" is a geographical term, and, as such, cannot become the exclusive property of one party. Columbia Mill Co. v. Alcorn, 1893, 150 U.S. 460, 14 S.Ct. 151, 37 L.Ed. 1144; Elgin Nat. Watch Co. v. Illinois Watch Co., 179 U.S. 665, 21 S.Ct. 270, 45 L.Ed. 365. However, where a geographic name acquires a secondary meaning, so that by the process of association it is indicative not only of the origin of manufacture but of the name of the manufacturer or producer or of the quality of the particular article manufactured in that

locality, a right arises to have the use of the name protected against all who use it to indicate their products and who are not manufacturing within the same geographic limits. Elgin Nat. Watch Co. v. Illinois Watch Co., (Elgin Watches) 179 U.S. 665, 21 S.Ct. 270, 45 L.Ed. 365; Siegert v. Gandolfi (Angostura Bitters), 2 Cir., 149 F. 100; Pillsbury-Washburn Flour Mills Co. v. Eagle (Minneapolis Flour), 7 Cir., 86 F. 608, 41 L.R.A. 162; Newman v. Alvord, (Akron Cement) 51 N.Y. 189, 10 Am.Rep. 588.

Plaintiffs assert that a substantial secondary meaning has attached to the name "California" in the men's and women's apparel field and that in the mind of the purchaser it means that any garment bearing a label with the word "California" on it, was styled and made in California and not elsewhere. The charge is made that "the defendant firms are attempting to capitalize upon the glamour and the reputation of the State of California and the demand for California manufactured merchandise." The cloth used in the manufacture of the wearing apparel is not made in California, nor is the yarn used in the cloth a product of that locality. The cloth is obtained from various parts of the country, mostly from the East. There is no such relation between the origin of the material and the name of the locality as to warrant an exclusive use of the name by the manufacturers of that locality. It has not been shown in this case that any association exists in the minds of the buying public between the word "California" and the wearing apparel manufacture by any of the plaintiffs, so as to identify the products of any particular plaintiff manufacturer with the word "California." Nor has it been shown that the word "California" as used by any plaintiff has been used to identify a particular kind of cloth or a special and unique styling of some specific garment. A lot of general language about "fine styling, good workmanship, originality and color" is not sufficient. In some cases an injunction has been issued where there has been a misuse by outsiders of a geographic name in connection with a product of the soil, such as fruits and minerals. California Fruit Canners' Ass'n v. Myer, C.C., 104 F. 82; Harvey v. American Coal Co., 7 Cir., 50 F.2d 832. Wearing apparel is not a product of the soil.

California is a vacation or sport center in the minds of some of the public, who associate with the name the mild and agreeable character of California's climate. The name "California" associated with an article of clothing is indicative of the type of clothing suitable to the climate and relaxation found in California. If a manufacturer styles and creates clothing suitable for the comfort of those who like the outdoor life and sports of California, it is not a deception for him to so indicate. And the public is not thereby deceived when purchasing those articles. California is not the only place where those garments can be manufactured, or worn, or appreciated. The plaintiffs and defendants have customers all over the United States.

The case against California Sportswear, Inc. (by all the plaintiffs except California Sportswear Company), is that it uses the word "California" in its corporate name, on labels, tags, stationery and the like. Its label is plain and white; it shows no palm trees, sun, mountains, deserts or the like. The label is affixed only to skirts made out of a woolen fabric, and the purpose of the label is to certify to the fibre contents of the manufactured wearing apparel. The New York address plainly appears thereon. The president of the corporation, Joseph Ginsberg, has filed an affidavit sworn to February 1, 1946, in which he states:

"The word 'California' simply denotes climate and a place where casual, leisure garments are worn and does not infer or imply that the garments are styled or manfactured in that State. The word 'California' has acquired no special significance in the wearing apparel trade. Buyers from the State of California come to the City of New York to buy wearing apparel manufactured and styled here. * * * The textiles used by manufacturers of wearing apparel in the State of California are purchased by them from the East either directly or through selling offices maintained by Eastern Textile sellers in the State of California. * * * As a matter of fact,

wearing apparel manufactured in that State are not unique or distinctive."

The defendant, California Sportswear, Inc., has never held out that its sportswear is manufactured in California, or in any place other than New York. The only plaintiff who may have a claim against California Sportswear, Inc., is the California Sportswear Company, as hereinabove stated.

The case against the defendant, Wieder of California, Inc., comes down to this: That Wieder of California, Inc., competes unfairly because it is a New York corporation (incorporated in June 1944) manufacturing ladies wearing apparel in New York and not in California. Before Samuel Wieder came to New York in 1944 he was in the women's apparel business in California. He was a partner in the business of "L. C. Mae Company of Hollywood" with Frederick Loewy, whose present partner is the wife of Max Feingold, plaintiff's attorney. Wieder had been in business in California at various times since 1929 and was continuously so engaged from 1939 to 1944. He claims to have been a designer of women's wearing apparel as well as a production manager. His former associates in the Mae Company say he never designed but only produced garments. I do not believe the issue is of any importance in the decision of this case.

The defendant Wieder charges that many of the plaintiffs either purchase patterns and styles in the New York market or else purchase the manufactured wearing apparel here and affix their own labels in California, so that either as to styling or place of manufacture they are New York products. Concerning the use of the word "California" he states in his affidavit of January 23, 1946:

"The plaintiffs imply in their moving papers that the word 'California' when used on an apparel label signifies that the product is made in California. From my long and varied experience in the industry, I know that this is not the fact. If the word 'California' has any significance at all on an apparel label, its significance is that the garment is made for use in a climate such as California, rather than manufac- tured in California. To the same extent, a Palm Beach suit manufactured by the Goodall Manufacturing Co. in the East does not deceive the public into thinking that the suit was actually made in Palm Beach, but rather that it is the kind of suit one would wear in a climate prevalent in Palm Beach. Besides, there is nothing special about the geographic location of California, which makes its garments unlike those made in other sections of the country. The casual type coat or suit we produce, can be worn in any warm climate, not alone in California."

Plaintiffs urge that the Court should enjoin anyone who falsely represents himself as manufacturing wearing apparel in California, because the public is thereby deceived. That might be a public wrong but it would not be the basis of a private suit by a California manufacturer unless the plaintiff could show that the offender's goods were being passed off on the purchasing public as plaintiff's goods. For a deception of the public in advertising ones wares, the Federal Trade Commission may take action. El Moro Cigar Co. v. Federal Trade Comm., 4 Cir., 107 F.2d 429. Where the unfair competition arises out of a controversy essentially private in its nature, the Federal Trade Commission lacks jurisdiction. "To justify filing a complaint (in a Federal Trade Commission proceeding) the public interest must be specific and substantial". Federal Trade Comm. v. Klesner, 280 U.S. 19 at page 28, 50 S.Ct. 1, at page 4, 74 L.Ed. 138, 68 A.L.R. 838. If the plaintiffs feel that they can establish any such public interest, their remedy is before the Commission.

The prevention of monopoly must be balanced with the necessity of maintaining free competition and a free market, in determining what constitutes unfair competition. Germanow v. Standard Unbreakable Watch Crystals, 1940, 283 N.Y. 1, 27 N.E. 212; Millinery Creators' Guild v. Federal Trade Comm., 2 Cir., 109 F.2d 175. Such a consideration, in view of plaintiffs' failure to clearly establish a claim for relief within the elements of an action for unfair competition, warrants a declaratory judgment for the

defendants under Rule 56 of the Federal Rules of Civil Procedure and a dismissal of the complaint on the merits, with two exceptions.

This is properly a case where summary judgment may be had under Rule 56, F.R.C.P. There appears no valid reason to differentiate between various types of action in testing the applicability of the Rule. Such a tendency is contrary to the purpose and spirit of the new federal procedural machinery. Houghton Mifflin Co. v. Stackpole Sons, D.C.S.D.N.Y.1940, 31 F.Supp. 517. The rule was intended to promptly dispose of actions in which there was no genuine issue of a material fact and to facilitate the operation of federal judicial machinery. The factors of each case decide the question of whether summary judgment should be granted, not the nature of the action. Gasifier Mfg. Co. v. Ford Motor Co., D.C.Mo.1939, 1 F.R.D. 10. The purpose of this procedure is well stated in Engl v. Ætna Life Ins. Co., 2 Cir., 1943, 139 F.2d 469, 472:

"The federal summary judgment proceeding is the most extensive of any jurisdiction in that it is equally available to plaintiffs and defendants and in all forms and kinds of civil actions. * * * it is intended to permit 'a party to pierce the allegations of fact in the pleadings and to obtain relief by summary judgment where facts set forth in detail in affidavits, depositions, and admissions on file show that there are no genuine issues of fact to be tried.' * * *"

Plaintiff's motion for a preliminary injunction came before me on December 18, 1945, and I set it down for argument on the questions of law on December 21st. It was clear that in order to meet the factual allegations of the motion papers and of the complaint, which had been served only two weeks before, the defendants would require time and their attorneys so stated. Because Mr. Max Feingold, plaintiffs' attorney, was here in the East on this case I accommodated him by hearing argument on the questions of law. The Attorney General of the State of California had forwarded a brief amicus curiæ. At the end of the argument I fixed January 21st as the date when the defendants were to serve their answering affidavits and February 11th for the service of plaintiffs' reply affidavits. These dates were further extended and the defendants began their investigations and checked the allegations of the plaintiffs' moving papers.

On January 14, 1946, plaintiffs filed a notice for a voluntary dismissal of the action without prejudice against two of the defendants, Cortley Shirt Company and California Sportswear, Inc. Those two defendants then moved this Court for an order approving the dismissal of the action against them, but on such terms as the Court might fix, and contended that under Rule 23(c), F.R.C.P., the dismissal of a class action could be had only with the approval of the Court. On the return day of these motions, January 18th, a question was raised as to the source of the authority of plaintiffs' local counsel to file the dismissal. The following day, January 19th, Mr. Feingold notified his local counsel and indicated that his intention with respect to the dismissal of the case against those two defendants was that the said two defendants should stipulate that they would stop using the name "California" in their business. The defendants had not been consulted at all about any such stipulation and after some discussion on January 18th Mr. Kleinman, local counsel for Mr. Feinberg, asked that he be relieved of the consequences of having filed the notice for a voluntary discontinuance of the action as against the said two defendants; in fact he had theretofore served the defendants' attorneys with a notice to the effect that the notice of discontinuance was "served inadvertently in the above action—all proceedings are to continue as against all defendants." Mr. Kleinman on January 18th advised the Court that Mr. Feingold had phoned him that he intended to proceed as against all three defendants. The Court thereupon, with the consent of the attorneys for all defendants, relieved Mr. Kleinman from his "inadvertent filing of the notice of dismissal or discontinuance" and the time of the defendants to serve answering affidavits was extended to February 4th and the time for the service of the reply affidavits of the plaintiffs was extended to February 18th.

The defendant, Cortley Shirt Company, Inc., filed its answer January 24th, and the defendants, California Sportswear, Inc., and Wieder of California, Inc., answered February 4th. All the answers contained a counterclaim for summary judgment, adjudicating the rights of defendants to use the word "California" or "Californian" in their business and on their labels. The plaintiffs filed replies to the counterclaims February 23rd.

On February 15th Mr. Kleinman had served a notice that on February 21st he would present to me a notice withdrawing the motion for a preliminary injunction as against all three defendants, it being stated in the notice that the issues in the case could be tried on the merits in the very near future, and that was given as the reason for the withdrawal. At the hearing it developed that Mr. Feingold had sent Mr. Kleinman a long telegram in which he indicated that if the withdrawal would be embarrassing to defendants he would not press it. After a long argument before the Court on February 21st I stated: "* * * In view of all the time that has been devoted to preparing the (answering) affidavits in connection with the plaintiffs' motion for the preliminary injunction, I think it would be prejudicial, I think we should have some determination of this issue. There has been a lot of publicity given to this case in the trade, and I think there should be some kind of a ruling on it." So the motions for a preliminary injunction were continued and I extended the plaintiffs' time to serve replying affidavits to March 4th.

The defendants Cortley Shirt Company, Inc., and Wieder of California, Inc., served papers on a motion for summary judgment on February 18th and 19th respectively, the motions being returnable February 21st. On February 26th the defendant, California Sportswear, Inc., served papers on a similar motion returnable March 5th. The purpose of these motions was discussed at the hearing before me on February 21st.

On February 28th Max Feingold made an affidavit, which was served March 4th, in which he stated in effect that it would be impossible for him to obtain all the affidavits he required to meet the defendants'

motions for summary judgment within the time fixed by the Court, but that he had prepared some affidavits which he was forwarding—a 10 page affidavit of his own; a 6 page affidavit of I. 'Whiser, Treasurer of California Sportswear Company, with numerous exhibits; an 11 page affidavit of F. N. Cole, Chairman of California Apparel Creators, with numerous exhibits; a 2 page affidavit of L. Chennault Paine, a patent attorney; a 4 page affidavit of Philip Garb, executive director of Los Angeles Coat and Suit Manufacturing Association with exhibits annexed; affidavits of Fred Loewy, Irving Fox, B. A. Beller, Josephine Mann, and a joint affidavit of three other individuals. Although at the end of February, Mr. Feingold was complaining that he did not have* enough time (until March 4th) in which to obtain affidavits and meet the issues on defendants' motions for summary judgment, yet on December 18, 1945, he thought that a time schedule requiring the submission of all affidavits on the motion for a preliminary injunction by February 11th, 1946 as "too long and that a shorter time should be given." The same issues are presented by both sets of motions.

I make the following disposition of the defendants' motions for summary judgment:

(1) The defendant, Wieder of California, Inc., is entitled to a summary judgment:

(a) Dismissing the complaint as to said defendant,

(b) adjudicating that said defendant is entitled to continue to use the word "California" in its corporate name and on its merchandise.

(2) The defendant, California Sportswear, Inc., is entitled to a summary judgment:

(a) Dismissing the complaint of all plaintiffs, except California Sportswear Company, as against said defendant;

(b) adjudicating that said defendant is entitled to continue to use the word "California" in its corporate name and on its merchandise as against all plaintiffs except California Sportswear Company and as to said plaintiff reserving that issue for a separate trial;

(3) The defendant, Cortley Shirt Company, Inc., is entitled to a summary judgment:

(a) Dismissing the complaint of all plaintiffs, except California Sportswear Company, as against said defendant,

(b) adjudicating that said defendant is entitled to continue to use the word "Californian" in labeling its merchandise and in association with its corporate name,

(c) reserving for a separate trial any claim the plaintiff, California Sportswear Company, may have against said defendant, arising from the use, at one time, by said defendant of a label allegedly similar to that used by said plaintiff;

(4) Plaintiffs' joint motion for a preliminary injunction is denied.

(5) The motions of the named defendants for security for costs are disposed of as follows:

(a) The motion of the defendant, Wieder of California, Inc., for security for costs is denied.

(b) The motions of the defendants, California Sportswear, Inc., and Cortley Shirt Company, Inc., for security for costs are denied as to all plaintiffs, except California Sportswear Company.

(c) The motions of the defendants, California Sportswear, Inc., and Cortley Shirt Company, Inc., for security for costs are granted as against the plaintiff, California Sportswear Company, and said plaintiff will be required to post a satisfactory bond for $250 in favor of said two defendants.

Settle orders in accordance with this opinion.