CARYL W. NEWTON & another,[1] trustees, vs. SAUL E. MOFFIE
& another.[2]

Suffolk. February 10, 1982. — April 23, 1982.

Present: HALE, C.J., ROSE, & GREANEY, JJ.

*Consumer Protection*, Availability of remedy, Transactions between part-
ners.

A private transaction between individual members of the same partner-
ship was not actionable under G. L. c. 93A, § 11, where the transac-
tion affected only the partners themselves and did not affect, either
directly or indirectly, the interests of the public, other businessmen, or
competitors. [465-470]

CIVIL ACTION commenced in the Superior Court on Sep-
tember 29, 1975.

The case was heard by *Good*, J.

*Edward P. Leibensperger* for the plaintiffs.

*Arthur M. Gilman & Kenneth G. Gilman*, for the de-
fendants, submitted a brief.

GREANEY, J. The plaintiffs in this action are trustees of a
trust established by the will of one Arnold Goodman. By
their original complaint in a single count, they sought to re-
cover damages for the trust on the ground that the defend-
ants, Goodman's former business partners, had intentional-
ly diverted partnership assets in violation of their fiduciary
duties. On the day of trial, the parties filed a written stipu-
lation waiving trial by jury. Mass.R.Civ.P. 38(d), 365
Mass. 801 (1974). After the waiver was filed, but before the
trial commenced, the plaintiffs moved to amend their com-
plaint to include a second count alleging that the defendants'

---

[1] New England Merchants National Bank.

[2] Gerald C. Goldman.

conduct constituted unfair or deceptive acts or practices in violation of G. L. c. 93A, § 11, as amended through St. 1979, c. 72, § 2. The defendants objected to the amendment. The judge decided that since a party is entitled to amend the pleadings to conform to the evidence, see Mass.R. Civ.P. 15(b), 365 Mass. 761 (1974), he would defer ruling on the motion until the conclusion of the trial, stating that "[i]f by any chance the evidence is such that it supports the [c.] 93A amendment to the complaint, I will take it at that time." The defendants did not file a new demand for a jury trial on the c. 93A claim, and the trial proceeded before the judge.

Following the trial, the judge filed findings of fact and conclusions of law, ruling that Moffie's conduct violated his fiduciary duty to Goodman. He also allowed the motion to amend and ruled that this conduct violated G. L. c. 93A, § 11. Based on these violations, the judge awarded the plaintiffs double damages, as permitted by § 11, in the amount of $14,120. On appeal, the defendants argue that the judgment on the c. 93A claim must be reversed because § 11 was not intended to apply to transactions within, i.e., among the members of, a single level entity like the partnership in this case. We agree, and reverse the judgment as to that count.[3]

---

[3] In view of our conclusion, we need not address the defendants' additional arguments (1) that the judge erred in allowing the amendment adding the c. 93A claim; and (2) that they were entitled to, and deprived of, a jury trial on that claim. As to the propriety of allowing the amendment, however, we note that § 11 gives a defendant the right to "tender with his answer . . . a written offer of settlement for single damages . . ." which, if reasonable and rejected by the plaintiff, will limit the defendant's liability to that amount. Defense counsel did not call this provision to the attention of the judge. Had he done so, and requested a continuance in order to file an answer and consider making such a tender, it would have been an abuse of discretion for the judge to deny that request, or to proceed to trial while reserving decision on the motion to amend. The importance of giving a defendant an opportunity to limit his damages by the procedure set out in § 11 can be appreciated by examining the purposes behind the analogous tender procedure available for response to a demand letter in actions under § 9. See *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688, 704-705 (1975); *Nader* v. *Citron*, 372 Mass. 96, 99-101 (1977), and cases cited.

From the judge's findings and the undisputed evidence, the facts may be summarized as follows. The plaintiffs' decedent Goodman and the defendants Moffie and Goldman were partners or joint venturers[4] as to the transactions in issue. At the time the partnership was formed, Moffie was authorized to conduct its business on behalf of the other partners, and it was he who handled all the transactions described below.

In 1965, the partners purchased an interest in an apartment building located in Brookline. Shortly thereafter, the partners sold that interest to one Edward J. McCormack, Jr., for $75,000, and McCormack executed a promissory note to the partners in that amount. In 1970, after several years of litigation on the note, McCormack made a cash payment and executed a new note in the amount of $27,000, which represented the balance of his indebtedness to the partners.[5] McCormack subsequently made payments on the new note of $5,000 in 1971 and $12,000 in 1974. Both payments were properly distributed to the partners in equal shares.

Approximately one month prior to the 1974 payment, Moffie and McCormack entered into a separate agreement. The first paragraph of that agreement referred to the $27,000 note held by the partners. The second paragraph referred to another promissory note in the amount of $60,000, executed by McCormack and payable to Congress Capital Corporation (CCC), which was owned by Moffie

---

[4] The judge, in his findings, used the terms partners and venturers interchangeably in describing the relationship between the parties. The distinction is of no consequence because "[f]iduciary duties are essentially the same in general partnerships, limited partnerships, and joint ventures." Crane & Bromberg, Partnership § 68, at 389 (1968).

[5] Both the 1965 and 1970 notes were, by their terms, payable only to Moffie and Goldman. The parties agree, and the judge found, however, that Goodman owned an equal one-third share of both notes.

In addition, it appears that Goodman died at some point prior to the 1970 payment. Although we employ his name throughout in referring to his interest, such references, as to events in and after 1970, are actually to the trustees of the trust established by Goodman's will.

individually. The third paragraph referred to a transaction by which CCC became the owner of an option to purchase certain land located in Brighton. The agreement went on to provide, in essence, that Moffie would discharge both of McCormack's notes, and would cause CCC to assign to Mc-Cormack the option to purchase the land, in return for a payment totaling $181,500. Moffie had complete control over the proceeds of this agreement, including their allocation to the various matters covered therein.

Moffie did not inform Goodman of his agreement with McCormack. Rather, as found by the judge, Moffie "represented to the plaintiffs that he had settled the . . . [$27,000] note," that he had "received only $12,000 from McCormack who was then in financial difficulties," and that he "considered it good and sound business practice . . . under those circumstances" to effect that settlement. Moffie then paid Goodman $4,000 as his share of the proceeds. The judge found that the full amount owed on the partners' note was $33,180 including accrued interest, that McCormack paid Moffie this amount to discharge the note, and that Goodman's proper share of this payment was $11,060. The judge also found that Moffie chose to "allocate less than the full amount received on the . . . note . . . so that he and/or CCC would realize a greater return on the [two] remaining matters" covered by the agreement, to his personal benefit and at the expense of the other partners.

The judge concluded that Moffie owed a fiduciary duty to the other partners in settling their note; that he violated that duty by commingling this matter with his personal affairs, and by failing to make a proper accounting to the partners; and that as a result of that violation, he owed Goodman an additional $7,060 as the remainder of Goodman's share of the proceeds. The judge also ruled that Moffie's conduct constituted a violation of G. L. c. 93A, § 11, and that the intentional nature of that conduct warranted an award of double damages.

The defendants do not dispute that the facts found by the judge are supported by the evidence. Nor do they question

the conclusion, as a matter of basic partnership law, that the plaintiffs are entitled to $7,060 on count 1 to reimburse Goodman's trust for the loss it suffered by reason of Moffie's misconduct. See *Latta* v. *Kilbourn*, 150 U.S. 524, 541 (1893); Crane & Bromberg, Partnership, *supra.* Instead they claim, correctly in our view, that the transaction was not within the scope of G. L. c. 93A, § 11.

Section 2(*a*) of G. L. c. 93A, inserted by St. 1967, c. 813, § 1, proscribes unfair or deceptive acts or practices in the conduct of any "trade or commerce." Section 1(*b*), as amended through St. 1972, c. 123, defines "'trade' and 'commerce'" as including "the advertising, the offering for sale, rent or lease, the sale, rent, lease or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this commonwealth." Section 11, as amended through St. 1979, c. 72, § 2, affords recovery to "[a]ny person who engages in the conduct of any trade or commerce" who suffers a loss by reason of conduct proscribed by § 2 on the part of *"another person* who engages in any trade or commerce" (emphasis supplied).

Taken on its face, the language of § 11 emphasized above does not appear to apply to a transaction like the one in issue, which was confined strictly to persons within the partnership. Of the several transactions involved, Moffie's liability was not based on those which he conducted with parties outside the partnership, i.e., his handling of the purchase and subsequent sale of the apartment building in Brookline. Rather, his liability rested solely on his conduct in settling the McCormack note to the detriment of Goodman, another member of the partnership. As to that transaction, there was clearly no "sale, rent[al] or lease" of property, as between the partners, to bring it under the definition of "trade" or "commerce" set out in § 1(*b*). Even if we assume that the settlement did involve a "distribution" of property among the partners within the meaning of § 1(*b*), it still

would be difficult to conclude that as to Goodman, a fellow member of the partnership, Moffie was "another person" engaged in trade or commerce, as required by § 11. It thus appears, as a matter of statutory construction, that § 11 was intended to apply only to dealings between legally separate "persons"[6] engaged in arm's length transactions, and not to dealings between members of a single legal entity like a partnership.

Moreover, we do not think that Moffie's settlement of the McCormack note constituted trade or commerce "directly or indirectly affecting the people of this commonwealth," within the meaning of § 1(b). This consideration is stressed in Federal cases construing the Federal Trade Commission Act, 15 U.S.C. 45(a)(1) (1976), by which we are to be guided in construing our own statute.[7] G. L. c. 93A, § 2(b). Those cases uniformly hold that where an allegedly deceptive act or practice arises out of a controversy which is essentially private in nature, and which has no actual or potential effect on the general public, it is beyond the purview of the Federal Trade Commission Act. See *California Apparel Creators* v. *Wieder of Cal., Inc.*, 68 F. Supp. 499, 506 (S.D. N.Y. 1946), modified, 162 F.2d 893 (2d Cir.), cert. denied, 332 U.S. 816 (1947). See also *Northam Warren Corp.* v. *FTC*, 59 F.2d 196, 198 (2d Cir. 1932); *FTC* v. *Cinderella*

---

[6] Section 1(a), as amended through St. 1972, c. 123, provides that "[p]erson' shall include, where applicable . . . partnerships . . . and any other legal entity." Although this definition makes clear that a partnership may itself be a party to an action under G. L. c. 93A, it does not indicate that individual members of the same partnership may be parties in actions against each other.

[7] We are also to be guided by the "reasonable construction of a regulatory statute adopted by the agency charged with . . . [its] enforcement." *Amherst-Pelham Regional Sch. Comm.* v. *Department of Educ.*, 376 Mass. 480, 491 (1978), and cases cited. We have therefore examined the regulations promulgated by the Attorney General pursuant to G. L. c. 93A, § 2(c). Our examination reveals that the bulk of these regulations, which define specific instances of acts or practices which violate the statute, are written in a context which envisions transactions between wholly independent parties. The regulations do not appear to cover dealings between the individual members of a partnership.

*Career & Finishing Schs., Inc.,* 404 F.2d 1308, 1313 (D.C. Cir. 1968); *Spiegel, Inc.* v. *FTC,* 494 F.2d 59 (7th Cir.), cert. denied, 419 U.S. 896 (1974). Although we recognize that the Federal Act, unlike our own statute, provides for no private right of action, and that the public interest language in § 1(*b*) apparently was not intended to be limiting, or to create a separate element of the cause of action, we think these cases provide additional support for the conclusion that § 11 was not enacted to "provide an additional remedy for private wrongs which do not and could not affect the . . . public generally." *Zeeman* v. *Black,* 156 Ga. App. 82, 82-83 (1980) (construing a similar statute, also modeled on the Federal Act, which contains language [Ga. Code § 106-1202(c) (1981 Supp.)] identical to that quoted from § 1[*b*] above). Assuming, then, that the effect of the questioned conduct on the public interest is a relevant consideration in deciding whether the conduct falls within our Act, we find nothing in the record which indicates that Moffie's conduct in settling the note had any palpable detrimental effect on the public interest.

Our own cases also indicate that the present situation is beyond the scope of § 11. In *Lantner* v. *Carson,* 374 Mass. 606 (1978), which held that § 9 does not apply to the sale of a house by one private individual to another, the Supreme Judicial Court expressed the view that "as broadly and expansively as the statute applies to the regulation of business practices, see *Slaney* v. *Westwood Auto, Inc.,* 366 Mass. 688, 693 (1975), G. L. c. 93A is not available where the transaction is strictly private in nature, and is no way undertaken in the ordinary course of a trade or business." *Id.* at 607-608. In *PMP Associates* v. *Globe Newspaper Co.,* 366 Mass. 593 (1975), which held that § 11 does not apply to a refusal by one company to deal with another, the court applied standards which require inquiry whether the conduct in question has "cause[d] substantial injury to . . . competitors or other businessmen."[8] *Id.* at 596. These

---

[8] The inquiry quoted above is one of three factors considered by the Federal Trade Commission in determining whether a challenged practice

principles were applied in *Second Boston Corp.* v. *Smith*, 377 Mass. 918 (1979), an order for summary disposition, which reads in full as follows: "Claims by an employer against his employee for breach of duty as an employee are not within the scope of G. L. c. 93A. See *Lantner* v. *Carson*, 374 Mass. 606, 607-608 (1978); *PMP Assocs.* v. *Globe Newspaper Co.*, 366 Mass. 593, 596 (1975). *Judgment affirmed.*"[9] In view of the cases on which the court relied, and in light of the record in that case, we read the order in *Second Boston Corp.* as suggesting, if not confirming, that § 11 is not available as a remedy for a private grievance between one member of a legally recognized entity or relationship and another who acts as his agent.

We therefore hold that a private transaction between individual members of the same partnership is not actionable under § 11 where the transaction affects only the partners themselves and does not affect, either directly or indirectly, the interests of the public, other businessmen, or competitors. It bears emphasizing, however, that in determining whether a defendant's conduct is actionable in a particular case, the principles discussed are not to be applied mechanically. Rather, the answer to this question will depend on a

---

violates the Federal Act. The other two factors require consideration "whether the practice . . . is within t least the penumbra of some common-law, statutory, or other established concept of unfairness; [and] . . . whether it is immoral, unethical, oppressive, or unscrupulous . . . ." See 29 Fed. Reg. 8324, 8355 (1964). The Commission's test was apparently approved by the United States Supreme Court in *FTC* v. *Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n.5 (1972).

[9] An examination of the record in the *Second Boston Corp.* case reveals that the plaintiff, a restaurant owner, was seeking to recover funds embezzled by the defendant, an employee responsible for the "general management and oversight" of the restaurant; that the action was brought under G. L. c. 93A, § 11, and that the complaint had been dismissed in the Superior Court under Mass.R.Civ.P. 12(b)(6), 365 Mass. 755 (1974), for failure to state a claim upon which relief can be granted. The duty owed by an agent to his principal to account for and pay over profits made in connection with his responsibilities as an agent parallels the duty owed between partners as to the handling of partnership funds. See *Mackey* v. *Rootes Motors, Inc.*, 348 Mass. 464, 467-468 (1965). Compare Crane & Bromberg, Partnership, *supra* § 68, at 389.

careful analysis of the particular "circumstances of each case." *Begelfer* v. *Najarian,* 381 Mass. 177, 191 (1980). Upon analysis of the facts in this case, we are satisfied that the trial judge erred in ruling that the plaintiffs could recover under § 11. Compare *Nader* v. *Citron,* 372 Mass. 96, 101-103 (1977) (also involving alleged breach of fiduciary duty, but based on arm's length transactions between wholly independent parties); *Begelfer* v. *Najarian, supra* at 189-191 (finding defendants' participation in transaction between independent parties not to have taken place in a "business context," and stating criteria for determining liability under that test); *Lynn* v. *Nashawaty,* 12 Mass. App. Ct. 310, 311, 313-314 (1981) (applying "business context" test to buyer's grievances after arm's length sale of a business).

One question remains concerning the disposition of this case. The judgment runs not only against Moffie but also against the defendant Goldman. Both defendants claimed and perfected an appeal from the judgment. There is nothing in the evidence, or in the judge's findings, which supports the judgment against Goldman on the remaining claim for breach of fiduciary duty. Indeed, all parties appear to have briefed and argued this appeal on the implicit assumptions that Moffie alone committed the breach and that he alone is responsible to the plaintiffs. In these circumstances, the liability imposed on Goldman cannot be maintained.

The judgment is reversed. The case is remanded to the Superior Court with instructions to enter a new judgment (a) running against Moffie on count 1 in the amount of $7,060, with interest and costs; and (b) dismissing count 1 as against Goldman, and count 2 as against both defendants.

*So ordered.*