Donohue, J.
Plaintiff John Sandstrom (“Sandstrom”) commenced this action against defendant Agri-Mark, Inc. (“Agri-Mark”) in Worcester Superior Court in October 1987, alleging breach of contract and violation of M.G.L.c. 93A. The case was remanded to Clinton District Court, where defendant moved for partial Summary Judgment. The District Court entered judgment for Plaintiff. Sandstrom v. Agri-Mark, Inc., Civil No. 3559 (Dist. Ct. Dept., Clinton Div., Nov. 16, 1989) (Zide, J.). After a hearing, the parties stipulated to an award of damages of $5,850.14 plus interest from the date the complaint was filed, $1,653.43, and costs of $50.00. Defendant then requested a retransfer to this Court for a trial de novo on Count I. Plaintiff separately requested a retransfer on Count II. After a trial de novo, without jury, and based upon all the credible evidence, this Court makes the following findings of fact and rulings of law.
FINDINGS OF FACT
This case was submitted to the court on an agreed statement of facts. The facts as stipulated to indicate:
1. Agri-Mark, a Delaware corporation, is a dairy cooperative which markets the milk of its members and is composed of approximately 2100 farmers.
2. Sandstrom is a dairy farmer in Holden, Massachusetts. He was a member of Agri-Mark from July 1980 through August 1984.
3. Each member farmer (“Member”) signs a member marketing agreement (the “Agreement”).[1]
4. The Members own and control Agri-Mark. Through a geographic representation plan, Members elect Regional Representatives and Directors to govern the cooperative. The Board of Directors (the “Board”) vote on any action which, in a regular corporation, would require a shareholder vote. The Board votes in accordance with the vote of Regional Representatives. All actions of the Board are subject to annual review by Regional Representatives. Former Members do not vote on the election of Regional Representatives or Directors.
5. Agri-Mark’s by-laws give the Board the power to alter the terms and conditions upon which any repayment of Member equity contributions is made.[2]
6. Agri-Mark is financed by equity contributions provided by Members. Members are generally required to make an initial equity contribution based upon historical or anticipated milk production, and leave some of those proceeds in the cooperative each year.
7. Agri-Mark’s Member Equity Plan (the “Plan”) sets forth regulations that govern Members’ equity contributions, which are amended by the Board from time to time.
8. When Members terminate their memberships in Agri-Mark, the Members’ equity contributions are returned over a repayment period which is set forward in the Plan.[3] No interest is paid on the equity contributions.
9. In 1980, when Sandstrom joined Agri-Mark, the Plan provided for repayment of Member equity contributions to terminating Members in five equal annual installments.
10. The Plan requires the Board to annually review all concepts, procedures and goals of the plan, and to make appropriate changes when necessary.
11. When Sandstrom resigned his Membership in August 1984, his total equity contribution in Agri-Mark was $14,625.25. The Plan provided for a five-year payout. In 1985, Sandstrom received his first payout of $2,925.05 on the five-year payout schedule.
12. In 1986, after Sandstrom had resigned as a Member but before he had been paid all of his equity contributions, the Board amended the repayment provisions of the Plan to extend the repayment period for equity contributions for past, current, and prospective members from five to seven years. No notice was given to Sandstrom prior to the action of the Board which amended the payout schedule. Sandstrom received payouts in 1986, 1987, 1988, 1989, 1990 and 1991 of $1,950.03 each on the seven-year payout schedule. Sandstrom would have been paid in full in 1989 if the Board had not extended the payout schedule.
13. The Board elected to extend the repayment period of Member equity contributions to lessen the impact on the Cooperative resulting from a decrease in Agri-Mark’s Membership due to farm financial conditions and the federal “Total Herd Buyout Program.” The Total Herd Buyout Program was designed to reduce the number of milk cows which caused a decrease in Agri-Mark’s Membership and a corresponding decrease in Agri-Mark’s Member equity contributions.
*438 RULINGS OF LAW
Massachusetts General Laws Chapter 231, §102C provides, in relevant part:
Any party to . . . [a]. .. transferred action aggrieved by the finding or decision may as of right have the case retransferred for determination by the superior court . . . [and] The decision, and the amount of damages assessed, if any, by a district court shall be prima facie evidence upon such matters as are put in issue by the pleadings.
A defendant who retransfers a case to the superior court in which a district court has rendered a decision, has a right to a trial on the merits in the superior court. Nuger Sales & Serv., Inc. v. Pioneer Credit Corp., 345 Mass. 249 (1962). A superior court judge is not obliged to accept a district court judge’s finding without question even if it is supported by an appellate division decision. Harrison v. Textron Inc., 367 Mass. 540 (1975). The “prima facie evidence” of a district court’s decision, under M.G.L.c. 231, §102C, is weighed like any other evidence on any question of fact to which it is relevant. Lubell v. First Nat’l Stores Inc., 342 Mass. 161 (1961).
In the present action, plaintiff Sandstrom maintains that Agri-Mark’s authority to deal with any financial impact of the Total Herd Buyout Program is limited to modifying the repayment terms to current Members, not former ones. He furthermore asserts that the language in the by-laws, which gives the Board the power to retain any funds for working capital, were a legally insufficient basis for the amendment to extend the payout period.
Defendant Agri-Mark argues that the Plan was properly amended under the terms of the Plan and the by-laws. Agri-Mark thereby denies all liability for this amendment to the Plan, states that the amendment was neither unfair or deceptive, and furthermore asserts that M.G.L.c. 93A does not apply to this action.
A. Count I: Breach of Contract
The District Court found that this action was governed by M.G.L.c. 106, §2-106(3),[4] and that Sandstrom could not be bound by an action taken after he terminated his contractual relationship with Agri-Mark. However, the District Court’s reliance on Article II of the Uniform Commercial Code is erroneous because the predominant purpose of Sandstrom’s Agreement with Agri-Mark was not for the “sale of goods.” See ITT Corp. v. LTX Corp., 732 F.Supp. 1225, 1234 (D.Mass. 1990), rev’don other grounds, 926 F.2d 1258 (1991). A contract involving both the sale of goods and the rendition of services should be evaluated to determine if the predominant factor is the providing of services with goods incidentally involved or a sale with labor incidentally involved. ITT Corp., supra. Here, although Sandstrom’s contract with Agri-Mark involved the sale of milk, the predominant purpose of the contract was for Agri-Mark to provide the service of obtaining a market for Sandstrom’s milk and market it on Sandstrom’s behalf. As the predominant purpose of Sandstrom’s contract with Agri-Mark was for the service of obtaining a market, rather than for the sale of goods, Article II does not apply.
A fair reading of Massachusetts contract law indicates that Sandstrom agreed to abide by the terms of the Plan when he signed the Agreement upon becoming a Member. In Massachusetts, parties to a contract are bound by the plain terms of their contract. Hiller v. Submarine Signal Co., 325 Mass. 546, 550 (1950). If the provisions of a contract are free from ambiguity, they must be construed in accordance with their ordinary and usual sense. Edwin R. Sage Co. v. Foley, 12 Mass.App.Ct. 20, 28 (1981).
The Plan and by-laws specifically give the Board the authority to increase the repayment period of the member equity contributions. The Agreement Sandstrom signed was specifically “subject to the by-laws ... of the Cooperative,” with “all revisions . . . deemed a revision or addition to this agreement.” The Plan specifically required the Board to “make appropriate changes when necessary,” and that the “[rjefunding of any member equity contribution ... is subject to approval of the Board of Directors after reviewing the financial appropriateness thereof under circumstances existing at the time of repayment.” As Sandstrom agreed to this arrangement, his rights to repayment are governed by those terms. As such, no breach of contract exists and Agri-Mark is entitled to prevail on Count I.
B. Count II: Violation of M.G.L.c. 93A[5]
Plaintiff alleges that the amendment of the Member Equity Plan was unfair and deceptive, in violation of M.G.L.c. 93A, §11.
Massachusetts General Laws Chapter 93A, §11 provides a remedy for a business person who has suffered a loss in trade or commerce as a result of a unfair or deceptive trade practice.[6] This remedy is not available in situations which are essentially “private in nature." Riseman v. Orion Research, Inc., 394 Mass. 311, 313 (1985); Manning v. Zuckerman, 388 Mass. 8, 14 (1983); Newton v. Moffie, 13 Mass.App.Ct. 462, 467 (1982). The relationship among the Members of an agricultural cooperative is analogous to a corporation or partnership, with the rights and responsibilities of the members set out in the by-laws. As the relationship between Agri-Mark and its Members is essentially “private in nature,” M.G.L.c. 93A §11 does not apply to plaintiffs situation. See Riseman, supra at 313 (stockholder complaints about meetings and proxy solicitations private in nature, rendering M.G.L. 93A inapplicable); Manning, supra at 14 (contract disputes between an employee and employer private in nature and not subject to M.G.L.c. 93A); Newton, supra at 467 (transactions between partners in a partnership private in nature and not under M.G.L.c. 93A).
*439 Even if M.G.L.c. 93A were applicable to Sandstrom’s situation, Agri-Mark’s conduct in amending the by-laws through proper action by its Board does not rise to “a level of rascality that would raise an eyebrow of someone inured to the rough and tumble world of commerce.” Levings v. Forbes & Wallace, Inc., 8 Mass.App.Ct. 498, 504 (1979). Therefore, as M.G.L.c. 93A not only appears inapplicable to the present action, but Sandstrom has not shown more than, at most, an unequitable act, Agri-Mark is entitled to prevail on Count II.
ORDER
For the foregoing reasons, it is ORDERED that in Civil Action No. 87-2311, judgment enter for defendant Agri-Mark on Counts I and II, both plaintiff Sandstrom’s breach of contract and M.G.L.c. 93A claims. It is furthermore ORDERED that plaintiff is not entitled to any interest on withheld payments, attorneys fees, treble damages or costs.

 Paragraph 9 of the Member Marketing Agreement states: “This agreement is subject to the by-laws, rules and regulations of the Cooperative and any and all revisions or additions thereto shall be deemed a revision or addition to this agreement.”

Article 10.4 of Agri-Mark’s by-laws provides, in relevant part: “[t]he funds needed for capital purposes, including requirements for working capital, and for such other purposes as may be determined by the Board of Directors, may be retained ... by the Cooperative in such amounts and upon such terms as may be established from time to time by the Board of Directors .... The Board of Directors may also establish and alter the terms and conditions upon which any funds retained under Section 10.4 may be refunded.”

Paragraph 14 of the Member Equity Plan provides: “Refunding of any member equity contribution or allocated retained earnings is subject to approval by the Board of Directors after reviewing the financial appropriateness thereof under circumstances existing at the time of the repayment.”

Massachusetts General Laws Chapter 106, §2-106 provides, in relevant part:
‘Termination” occurs when either party pursuant to a power created by agreement or law puts an end to the contract otherwise than for its breach. On ‘termination’ all obligations which are still executory on both sides are discharged but any right based on prior breach or performance survives.

The District Court’s findings are silent on plaintiffs claim of a violation of M.G.L.c. 93A.

Massachusetts General Laws Chapter 93A §2 provides, in relevant part: “Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.”
Massachusetts General Law Chapter 93A, §11 provides a remedy for: ”[A]ny person who engages in the conduct of any trade or commerce.”