EUGENE SZALLA *vs.* SIMEON LOCKE.

Essex. September 14, 1995. - December 8, 1995.

Present: LIACOS, C.J., WILKINS, LYNCH, & O'CONNOR, JJ.

*Consumer Protection Act*, Availability of remedy, Trade or commerce, Unfair or deceptive act. *Practice, Civil*, Damages. *Damages*, Quantum meruit, Deceit, Breach of partnership agreement.

An association between two persons in the interests of forming a business venture together is not the sort of commercial transaction to which the provisions of G. L. c. 93A are applicable. [450-452]

In the circumstances of a civil action in which the jury awarded damages to the plaintiff on claims for breach of a partnership agreement, deceit, and quantum meruit, the verdicts were duplicative where they were all based on the same acts and the same injury: the plaintiff was to elect from among the accounts. [453-454]

CIVIL ACTION commenced in the Superior Court Department on December 21, 1988.

The case was tried before *Peter F. Brady*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Thomas G. Hoffman* for the defendant.

*Wendy Sibbison* for the plaintiff.

LYNCH, J. This action arises from the failure of a business venture between the plaintiff, Eugene Szalla, and the defendant, Simeon Locke. The plaintiff brought this action in the Superior Court, alleging breach of contract, breach of partnership agreement, deceit, quantum meruit, and unfair or deceptive trade practices under G. L. c. 93A (1994 ed.). After trial a jury returned verdicts in favor of the plaintiff for deceit, breach of partnership, and quantum meruit. The trial judge ruled for the plaintiff on the G. L. c. 93A, § 11, claims and awarded reasonable attorney's fees and costs. The Ap-

peals Court affirmed, 37 Mass. App. Ct. 346 (1994), and we granted the defendant's application for further appellate review.

We summarize the facts as found by the trial judge. The defendant, a full-time physician, purchased the Highlands Nursery (Highlands) in Boxford in 1965. He conducted a wholesale and retail nursery business there for four years, with the help of his wife and a field hand. He made a profit in only one year. The retail sales were discontinued in 1970, although the wholesale nursery business continued.[1] In 1986, the defendant and a neighbor, Rick Haywood, undertook to open a retail business. The defendant paid for one-half the cost of materials to construct a retail greenhouse and the parties were to divide any profits equally. The business operated from 1986, until early July, 1987, at which time it was abandoned. The retail greenhouse operation was dormant from July through September, 1987. The plants died and the greenhouse deteriorated.

In the middle of September, 1987, the defendant and his wife discussed with the plaintiff their going into the nursery business. The defendant stated that he did not want an employee; he wanted a partner in the business. The plaintiff was very enthusiastic about the idea and four or five days later he went to the defendant's house and told him that he wanted to join him in a retail nursery business.

The plaintiff began drawing designs for the proposed greenhouse and from October, 1987, through January, 1988, the parties had numerous meetings and discussions concerning the development of the business. The terms of the business arrangement were that the enterprise would be known as "Boxford Gardens at Highlands Nursery" (Boxford Gardens). Highlands would pay all costs of renovation of the greenhouse, the attached shed, and the garden area. The plaintiff was to keep expenses as low as possible and be re-

---

[1]The parties stipulated that the defendant and the Highlands business were the same entity, so counts against Highlands were dismissed and only the complaints against the defendant as an individual remained. The defendant's wife prevailed on counts against her.

sponsible for all of the labor. Until Boxford Gardens gener-
ated income, Highlands would pay the cost of its inventory
and operating expenses. Highlands was to absorb all Boxford
Gardens's losses until there was income and profits, which
were to be shared equally. Although both partners would
make all major policy decisions, the plaintiff was to be in
charge of the day-to-day operation of the business.

The business was to open as of April 1, 1988, for the
Easter weekend and be open seven days a week from April
through December. There was no discussion regarding termi-
nation of the agreement; however, the defendant was to give
the plaintiff a right of first refusal to buy the business should
the defendant or his wife retire or die. In January, 1988, the
plaintiff and the defendant viewed their association as set,
and met with a tax accountant. They also filled out an appli-
cation for an employer identification number in which they
indicated to the Internal Revenue Service that their business
was a partnership.

On March 26, the defendant became insistent that the
nursery open for business on schedule. At that time, the
renovations were almost complete, although some work re-
mained to be done. The plaintiff complained that he was
tired and sore and could not concentrate on finishing the
renovations if he also had to attend to customers. The de-
fendant lost his temper with the plaintiff and told him to
"stop behaving like a little girl." This upset the plaintiff con-
siderably and at that point the plaintiff felt that the defend-
ant had ended their association. The plaintiff asked whether
he could keep his keys until Sunday. The defendant said "of
course." Both parties understood that the association was
over at that point.

After many additional hours of work by the defendant and
his wife, Boxford Gardens opened for the Easter weekend.
Boxford Gardens made a profit in 1988 of approximately
$1,500. In July, 1988, the defendant sent the plaintiff a
check for $500 for "design work."

1. *General Laws c. 93A.* The relevant inquiry here is
whether the parties' activities associated with the develop-

ment of a business constituted "trade or commerce" pursuant to c. 93A. The parties agreed that the plaintiff was not an employee, but rather that they wished to form some sort of an association: a partnership or a joint venture.

General Laws c. 93A, § 11, provides, in pertinent part:

> "Any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property . . . as a result of the use . . . by another person who engages in any trade or commerce of . . . an unfair or deceptive act or practice declared unlawful by section two . . . may . . . bring an action in the superior court . . . ."

It is well established that disputes between parties in the same venture do not fall within the scope of G. L. c. 93A, § 11. See *Zimmerman* v. *Bogoff*, 402 Mass. 650, 662-663 (1988) (c. 93A inapplicable to transactions and disputes between parties to joint venture and fellow shareholders in a close corporation); *Riseman* v. *Orion Research Inc.*, 394 Mass. 311, 313-314 (1985) (c. 93A inapplicable to claims by corporate stockholder against corporation stemming from dispute as to internal governance of corporation); *Manning* v. *Zuckerman*, 388 Mass. 8, 14-15 (1983) (c. 93A inapplicable to dispute between employer and employee); *Newton* v. *Moffie*, 13 Mass. App. Ct. 462, 469-470 (1982) (c. 93A inapplicable to claims between individual members of same partnership which arise from partnership business). The development of c. 93A suggests that the unfair or deceptive acts or practices prohibited are those that may arise in dealings between discrete, independent business entities, and not those that may occur within a single company. *Manning* v. *Zuckerman*, *supra* at 12. Although the judge ruled that the defendant was acting in a business context, we conclude that c. 93A requires that there be a commercial transaction between a person engaged in trade or commerce with another person engaged in trade or commerce. Once it has been established that a commercial transaction exists, then one may

address whether the individuals were acting in a "business context" and apply the test discussed in *Begelfer* v. *Najarian*, 381 Mass. 177, 190-191 (1980).

There has been no commercial transaction on these facts in the sense required by c. 93A. The judge relied in part on the facts that the plaintiff sold his services to the business entity being formed by the parties and that the statutory definition of "trade or commerce" includes the act of "offering for sale . . . any services." G. L. c. 93A, § 1. However, we concluded in *Manning* v. *Zuckerman, supra,* that the "services contemplated by this definition are those offered generally by a person for sale to the public in a business transaction." *Id.* at 13. The defendant was not purchasing the plaintiff's services. The defendant and the plaintiff made a private arrangement to form a business together. They both contributed significant efforts to the project. The plaintiff's contribution was to be primarily his time and labor while the defendant was to contribute the property where the business was to be conducted, capital, as well as a lesser amount of time. There never was an exchange of goods or services between the parties, either actual or contemplated.

This is also not a situation where an individual was selling a service, a business, or part of a business. See *McEvoy Travel Bureau, Inc.* v. *Norton Co.,* 408 Mass. 704 (1990) (travel agency selling travel services to business); *Lynn* v. *Nashawaty,* 12 Mass. App. Ct. 310 (1981) (sale of business assets from one party to another); *Bio Vita, Ltd.* v. *Rausch,* 759 F. Supp. 33 (D. Mass. 1991) (selling licensing rights to investment group). The plaintiff claims that some of the misrepresentations occurred prior to the formation of their association and therefore it was an "arms-length transaction." The plaintiff's argument is unavailing because the prior events occurred in the course of developing their mutual association which culminated in an agreement and an exchange of property and services. The association between the plaintiff and the defendant in the interests of forming a business venture together is not the kind of commercial transaction regulated by the statute.

2. *Duplicative damages*. Recovery of duplicative damages under multiple counts of a complaint is not permissible. *Mailman's Steam Carpet Cleaning Corp.* v. *Lizotte*, 415 Mass. 865, 870 (1993), citing *Calimlim* v. *Foreign Car Ctr., Inc.*, 392 Mass. 228, 235 (1984). The jury returned verdicts on the plaintiff's claims for breach of partnership agreement ($20,000), deceit ($2,000), and quantum meruit ($30,000), and the judge did not warn the jury against duplicating any recoveries. The jury verdicts must therefore be viewed in light of the judge's instructions regarding damages on each separate count. *Mailman's Steam Carpet Cleaning Corp.* v. *Lizotte, supra.*

After the verdicts, but before the jury were discharged, the defendant requested clarification on whether the verdicts were cumulative. The judge denied the defendant's request, stating that the verdicts spoke for themselves.

The plaintiff introduced evidence at trial on the value of his services in remodeling the greenhouse. The judge instructed the jury that, under quantum meruit, the plaintiff would be entitled to recover the fair and reasonable value of his services.[2] The jury awarded the plaintiff $30,000 as the value of his services.

To support his deceit claim the plaintiff relies on evidence that he was improperly induced to work on the defendant's

---

[2]The jury instruction was as follows:

"Another allegation in this particular case is under the label quantum meruit. This is a contract implied in law. Where no express contract is found, then the plaintiff has the burden of proving that he furnished work and labor to the defendant with the reasonable expectation of being paid for it by the defendant, and the defendant — having reason to believe that he was acting with such expectation — permitted him to act without objection. Under these circumstances, the law implies a promise to pay a reasonable amount for the labor and materials furnished — absent a specific written or verbal contract.

"It is said that a person who has been unjustly enriched at the expense of another is required to make restitution to the other. The underlying basis for awarding quantum meruit damages in an implied or quasi contract is unjust enrichment on — of one party — an unjust detriment to the other. If the plaintiff is entitled to recover under this particular theory of quantum meruit, he is entitled to recover the fair and reasonable value of his services."

greenhouse. This is the same conduct that justifies his recovery under the quantum meruit theory. The plaintiff argues that he is entitled to an award of damages for deceit based on the profit he believed the business would make. What he believed the business might make is mere conjecture. The plaintiff did not offer evidence of any actual loss caused by reliance on the defendant's statements other than the labor he expended. There cannot be double recovery of this damage.

On the breach of partnership claim, the judge instructed that the wronged partner was entitled to be placed in the same position he would have been in without the breach. *Meehan* v. *Shaughnessy*, 404 Mass. 419, 438-439 (1989). This does not include expectations of income from business not yet established. *Id.* at 439. At the time the partnership ended, the business had not yet opened. Quantum meruit damages is a reasonable theory of recovery when a partner is excluded from a partnership prior to a business opening. See *Air Technology Corp.* v. *General Elec. Co.*, 347 Mass. 613, 626-629 (1964); *Anisgard* v. *Bray*, 11 Mass. App. Ct. 726, 731 (1981). In this case, therefore, the fair value of the plaintiff's services which he expended on the nursery was the basis for the damages awarded on the breach of contract, deceit, and quantum meruit counts. There was no other testimony at trial regarding the plaintiff's actual damages.

Thus, we conclude that the verdicts are duplicative. Where the same acts cause the same injury under more than one theory, duplicative damage recoveries will not be permitted. *Calimlim* v. *Foreign Car Ctr., Inc., supra* at 236. Even if the wrongdoing occurred at different times during the parties' relationship, the damages incurred by the plaintiff were the same. The plaintiff must elect from among the counts. *Colangeli* v. *Construction Serv. Co.*, 353 Mass. 527, 531 (1968).

3. *Other issues.* We agree with the reasoning and conclusion of the Appeals Court with regard to the remaining issues raised by the defendant.

4. *Conclusion.* We therefore vacate the judgment on the G. L. c. 93A claim and order entry of a judgment for the defendant. We remand the remaining claims to the Superior Court for an election by the plaintiff from among the damage awards we have adjudged to be duplicative, which we presume will be the largest verdict.

*So ordered.*