Agnes, A. J.
This civil action arises out of a partnership dispute. The plaintiff is a limited partner, and the defendants are general partners in the same two joint ventures that construct and operate storage facilities throughout the country. The plaintiff has moved for partial summary judgment on two of six counts stated in its verified complaint. The defendants have cross-moved for partial summary judgment on the same two counts.
BACKGROUND
The essential facts are not in dispute. Plaintiff, Equity Resources Fund XV, owned partnership units in two limited partnerships in which defendants are the two general partners. Plaintiff wished to tender an offer to fellow limited partners in order to buy additional partnership units. Under the partnership agreements, the plaintiff had a right to obtain a list of names and addresses of other limited partners upon payment of duplicating and mailing costs. Plaintiff alleged in its complaint that the defendants refused to turn over the requested lists of limited partner information, and that *189 defendant B. Wayne Hughes made his own tender offer to purchase additional partnership units. Plaintiff filed a complaint in five counts in August of 1997, alleging Breach of Partnership Agreement, Breach of Fiduciary Duty, Aiding and Abetting Breach of Fiduciary Duty, Unfair Competition, and Unfair and Deceptive Practices.
In May of 2000,[1] a Settlement Agreement was executed between the parties in which the plaintiff agreed to drop its lawsuit against the'defendants in exchange for defendants agreeing to sell it a pre-determined number of units in the limited partnerships. The Settlement Agreement was never consummated. Plaintiff amended its complaint to add a new count— Breach of Settlement Agreement.
The plaintiff has moved for summary judgment on CountV (Breach of Settlement Agreement), and Count VI (Unfair and Deceptive Practices). The defendants have cross-moved for summary judgment on both counts.
DISCUSSION
1. Standard for Summary Judgment
Summary judgment should be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors, Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). Also, summary judgment may be granted against the moving party, and may be granted as to certain issues but not others. See Community National Bank v. Dawes, 369 Mass. 550, 553 (1976).
The moving party bears the burden of establishing the absence of a triable issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once this is done, the burden shifts to the party opposing summary judgment, who must allege specific facts establishing the existence of a genuine issue or issues of material fact. Id. In assessing whether each party has met its burden, the court is not permitted to weigh the evidence, to determine the credibility of any witness, or make any findings of fact. Kelly v. Rossi, 395 Mass. 659, 663 (1985). Moreover, “(t]he evidence is ‘considered with an indulgence in the [opposing party’s) favor.’ ” Anthony’s Pier Four v. Crandall Dry Dock Engineering, Corp., 396 Mass. 818, 822 (1986), quoting National Assn of Gov’t Employees v. Central Broadcasting Corp., 379 Mass. 220, 231 (1979), cert. denied, 446 U.S. 935 (1980). However, “(a) complete failure of proof concerning an essential element of the non-moving party’s case renders all other facts immaterial.” Kourouvacilis, supra at 711, citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).
In determining whether there are genuine issues of material fact, the court may consider the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The party opposing summary judgment cannot defeat the motion simply by resting on the pleadings, and mere assertions that there are disputed facts. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). If the moving party does not bear the burden of proof at trial, it may demonstrate the absence of a genuine issue of material fact by submitting evidence that negates an essential element of the other party’s claim, or by showing that the other party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).
2. Plaintiffs Motion for Partial Summary Judgment on Count V (Breach of Settlement Agreement)
A) The outcome of the dispute that is encompassed by Count V turns on the determination of the effective date of the Settlement Agreement. This is generally a question of law. Suffolk Construction Co. v. Lanco Scaffolding Co., 47 Mass.App.Ct 726, 729 (1999). The plaintiff first argues that the execution date of the Settlement Agreement was July 19, 2000, and performance (in the form of the availability of funds with which to purchase additional partnership units) was rendered within 45 days. Memorandum In Support Of Plaintiff Equity Resource Fund XV’s Motion For Partial Summary Judgment at 9-11. The thrust of the defendant’s argument is that the Settlement Agreement was signed by the defendants on May 11, 2000, and by virtue of Paragraph 13 of the Agreement, that became its effective date even though the plaintiff did not sign the contract until July 19, 2000. Memorandum Of Defendants In Support Of Their Cross-Motion For Summary Judgment As To Count VI Of Plaintiffs Amended Complaint And In Opposition To Plaintiffs Motion For Partial Summary Judgment at 11-12.
Contrary to views expressed by the defendants, Paragraph 13 of the Settlement Agreement does not deal with the execution date. Settlement Agreement Par 13. Paragraph 13 merely states that because the parties are geographically dispersed, they are not obligated to sign the agreement in the same place, at the same time, and that they become bound once both have signed. Paragraph 13 further declares that “each party agrees that the resulting documents, and each duplicate original thereof, will have the same force and effect as if each party had signed the document at the same time in each other’s presence.” It does not state, as the defendants have argued, that execution occurs after the first party has signed.
The Settlement Agreement specifically provides that it is governed by Massachusetts law. Settlement Agreement Par 18. Under Massachusetts law, words in a contract that are plain and free from ambiguity must be construed in accordance with their ordinary and usual sense. Ober v. National Cas. Co., 318 Mass. 27, 30 (1945). As such, a written contract is generally *190 deemed to have been executed when it has been signed by the parties to it. Generally, parties to such a contract do not become bound until the agreement has been executed or signed. See Suffolk Construction Co., supra, at 729.
It is undisputed that the plaintiff did not sign the agreement until July 19, 2000. By the very terms of the Settlement Agreement, plaintiff had within 45 days to perform. Settlement Agreement Par 8. Plaintiff in fact rendered performance twice within that time. That view is supported by the behavior of the parties. Additionally, a contract should be construed in a manner, which will make it a rational business instrument that carries out the apparent intention of the parties. Bray v. Hickman, 263 Mass. 409, 412 (1928). The time suggested for execution by the defendants (May 11, 2000) is not plausible, because when the plaintiff signed the agreement on July 19, 2000, the parties were already well outside the 45-day time for performance.
Further support for the plaintiffs argument that the Settlement Agreement was not executed until July 19, 2000 is a July 5, 2000 letter from plaintiffs attorney Leonard M. Singer to defense counsel James E. Carroll. Second Affidavit of Leonard M. Singer (In Support Of Plaintiffs Motion For Summary Judgment) (Exhibit C); Affidavit Of Counsel For The Defense Submitted In Opposition To Plaintiff Equity Resource XVs Motion For Partial Summary Judgment (Exhibit 7). Enclosed with this letter was an amended first page of the Settlement Agreement that reflects the agreed upon number of partnership units that the plaintiffs would purchase from defendants.
Moreover, as plaintiffs counsel noted at oral argument, a material component of the Settlement Agreement i.e., the number of partnership units that the plaintiff would purchase, was not agreed upon until July 5, 2000. This undisputed fact supports the plaintiffs argument that the Settlement Agreement was executed on July 19, 2000. Defendants offered no explanation either at oral argument, or in their brief in opposition to summary judgment as to how the agreement could possibly have been executed on May 11, 2000, when an essential term of the Settlement Agreement was not finalized until July 5, 2000. The July 5, 2000 letter from plaintiffs counsel Singer to defendant’s counsel Carroll was mentioned in the defendant’s opposition brief merely as one of numerous letters exchanged between the parties, and again, to suggest an urgency in “closing the transaction as soon as possible.”[2] Memorandum Of Defendants, Public Storage Inc. And B. Wayne Hughes, In Support Of Their Cross-Motion For Summary Judgment As To Count VI Of Plaintiffs Amended Complaint And In Opposition To Plaintiff Equity Resource Fund XV’s Motion For Partial Summary Judgment at 8 and 13.
B) Plaintiff alternatively argues that even if the execution date for the Settlement Agreement was May 11, 2000, the contract was modified by a subsequent written agreement. Equity Resource Fund XV's Memorandum In Opposition To Defendant’s Motion For Summary Judgment On Count V And For Dismissal On All Other Counts Of The Amended Complaint at 10. The Settlement Agreement expressly provides that it “could be modified only by a writing executed by the parties that expressly states that it is a modification of this Agreement.” Settlement Agreement Par 12.
The Escrow Agreement, dated July 19, 2000, is a letter written by Attorney Carroll, representing the defendants, to Attorney Singer for the plaintiffs. Escrow Agreement (Affidavit of Leonard M. Singer (Exhibit F)). While it does not expressly state that it is a modification of the Settlement Agreement, it does refer to a settlement agreement dated as of May 11, 2000. It does not mention the date of execution. It also acknowledges that payment in full by the plaintiffs would not be accomplished until after July 19, 2000. No mention was made of a final performance date, or deadline. Plaintiffs Memorandum In Opposition To Defendant’s Motion For Summary Judgment On Count V And For Dismissal On All Other Counts Of The Amended Complaint at 15.
Defense counsel argued during oral argument that the Escrow Agreement was merely an accord between Attorneys Singer and Carroll, and not binding on the parties. However, it is well settled that the acts of an attorney can bind his client. McCarthy v. Tobin, 429 Mass. 84, 89 (1999) (“Attorney’s waiver of a closing deadline in a real estate transaction deemed binding on his client”). It is also settled that attorneys of record have an assumed authority to agree upon the amount of a judgment to be entered, or to other disposition of a lawsuit. Medford v. Corbett, 302 Mass. 573, 574 (1939). It is not in dispute that the essential purpose of the Settlement Agreement at issue is the disposition of an underlying lawsuit. Attorney Carroll, who represented the two defendants, both California citizens, wrote the Escrow Agreement. Attorney Carroll handled all of the settlement negotiations on behalf of the defendants, and should be presumed to have the authority to execute a written modification of the Settlement Agreement.
C) The defendants have argued that time was of the essence in consummating the Settlement Agreement, and that the plaintiffs failed to perform. Memorandum Of Defendants In Support Of Their Cross-Motion For Summary Judgment As To Count VI Of Plaintiffs Amended Complaint And In Opposition To Plaintiffs Motion For Partial Summary Judgment at 13. Courts hold parties to deadlines they have imposed upon themselves when they agree that time is of the essence. Vickery v. Walton, 26 Mass.App.Ct 1030, 1031 (1989). Time is not considered to be of the essence of an agreement unless there is an express agreement that it shall be, or there is a clear and necessary implication from the circumstances that is what the parties intended. Hazen v. Warwick, 256 Mass. 302, 307 (1926). *191 Moreover, the mere fact that there is a closing date fixed in a contract does not make time for closing of the essence. Blum v. Kenyon, 29 Mass.App.Ct 417, 421 (1990).
It is undisputed that the plain language of the Settlement Agreement contains no express “time is of the essence” language. Although a July 19, 2000 closing date was agreed upon by the parties, the time to close the deal was not made of the essence. When the closing did not occur on July 19, 2000, the defendant’s attorney drew up the Escrow Agreement which, as stated above, acknowledged that payment in full by the plaintiffs would not be forthcoming until a later time. Again, no time was set for performance, and there was no mention that time for performance was of the essence. When the transaction did not close on July 19, 2000, either party, by notice to the other upon unreasonable or unnecessary delay by the latter, might have assigned a reasonable time for the completion of the deal, thereby making performance within that time of the essence of the contract. Limpus v. Armstrong, 3 Mass.App.Ct. 19, 22 (1975). The undisputed facts give no indication that the parties intended that time be of the essence, or that either party gave notice to the other assigning a reasonable time for completing the transaction.
3. Defendant‘s Motion for Partial Summary Judgment on Count VI (93A Claim)
It is well established that disputes between parties in the same venture do not fall within the scope of G.L.c. 93A, §11. Szalla v. Locke, 421 Mass. 448, 451 (1995). The development of c. 93A suggests that the unfair or deceptive acts or practices prohibited are those that may arise in dealings between discrete, independent business entities, and not those that may occur within a single company. Id. Further, a private transaction between individual members of the same partnership is not actionable under G.L.c. 93A, §11 where the transaction affects only the partners themselves and does not affect either directly or indirectly, the interests of the public, other businessmen, or competitors. Newton v. Moffie, 13 Mass.App.Ct. 462, 469 (1982).
It is not disputed that the plaintiff is a limited partner, and the two defendants are the general partners in the same two limited partnerships. The plaintiff has offered no evidence that the transaction in question was anything but a purely private business deal between the parties. Nor has the plaintiff argued that there is any public interest at stake here. Defense counsel correctly stated at oral argument that this court has closely followed the reasoning in the Newton and Szalla decisions.[3] As such, Summary Judgment must be granted for the defendants on the 93A claim.
ORDER
For the above reasons, the plaintiffs motion for partial summary judgment as to Count V of its amended complaint is ALLOWED, and DENIED as to Count VI. The defendants’ cross-motion for partial summary judgment as to Count VI of plaintiffs amended complaint is ALLOWED.

The execution date on the agreement is May 11, 2000, although plaintiff relies on evidence that the agreement could have been signed by defendants at a later time i.e., in May, June, or July. However, the facts must be construed for the purpose of this background information in the light most favorable to the defendants.

The July 5, 2000 letter from Attorney Singer to defendant’s Attorney Carroll merely suggests the parties try for a closing date of July 18th or 19th. There is no mention of an impending urgency, nor of closing the transaction as soon as possible in the letter.

See Fredkin v. CAMELOT IS-2 INTL, INC. d/b/a Skyva International, 2002 WL 1020665 (Mass.Super.) (Plaintiffs 93A claim against defendant found to be wholly insubstantial and frivolous where plaintiff was a founder and major shareholder of defendant corporation); White Cliffs Community Assn., Inc. v. Ranieri, 1999 WL 825403, 10 Mass. L. Rptr. 339 (Mass.Super.) (Chapter 93A as a matter of law does not apply to an internal (private) dispute between condominium unit owner members and their community association); Foynes v. Lemay, 1994 WL 879786, 2 Mass. L. Rptr. 124 (Mass.Super.) (claims between two fifty-percent owners of a close corporation fall outside the scope of 93A where there is no palpable detrimental effect on the public interest).