THE STOP & SHOP SUPERMARKET COMPANY vs. KAREN
LOOMER & another.[1]

No. 03-P-1643.

Middlesex. November 16, 2004. - November 28, 2005.

Present: PERRETTA, GRASSO, & MILLS, JJ.

*Consumer Protection Act,* Trade or commerce, Availability of remedy. *Statute,*
Construction.

This court exercised its discretion to consider the merits of the defendants' ap-
peal from a Superior Court judge's determination, on summary judgment,
of their liability under G. L. c. 93A, notwithstanding the defendants' failure
to oppose the summary judgment motion in Superior Court, in circum-
stances where injustice would otherwise result. [171-172]

In an action brought under G. L. c. 93A, this court concluded that the conduct
of the defendants (a wife who worked for the plaintiff supermarket as a
cash office clerk and her husband), even if a conversion or deceit, did not
amount as a matter of law to a violation of G. L. c. 93A, § 11, where the
defendants' actions (consisting of the wife's cashing of the husband's
checks at her place of employment to obtain monies to keep the husband's
business afloat, while knowing that the checks were drawn on the
defendants' joint personal checking account that contained insufficient
funds) did not take place in the context of the defendants' engaging in
"trade or commerce" with the plaintiff as required by the statute, but
rather involved a garden variety instance of an individual passing bad
checks. [173-178] PERRETTA, J., dissenting.

CIVIL ACTION commenced in the Superior Court Department on
October 6, 1995.

The case was heard by *Patrick F. Brady,* J., on a motion for
summary judgment, and motions for reconsideration and for
relief from judgment were heard by him.

*Marc D. Padellaro* for the defendants.
*Matthew P. Tuller* for the plaintiff.

GRASSO, J. We consider whether G. L. c. 93A, § 11, applies to

[1]Richard J. Loomer.

the following circumstance. While employed as a cash office clerk at The Stop & Shop Supermarket Company (Stop & Shop), Karen Loomer cashed eight checks for her husband, Richard Loomer, in the amount of $5,185. Both knew that the checks were drawn on their joint personal checking account at a time when the account contained insufficient funds, but Richard had immediate need of cash to meet his general contracting company's payroll.

We conclude that the defendants' conduct, even if amounting to conversion or deceit, does not amount to a violation of G. L. c. 93A, § 11. We reverse an order entering summary judgment in favor of Stop & Shop on the c. 93A claims.

1. *Procedural background.* Underlying the merits is a complicated procedural history. In October, 1995, Stop & Shop commenced this action in the Superior Court against Karen, a cash office clerk in one of its stores, and her husband Richard, a general contractor.[2] Upon transfer of the case to the District Court and after trial, a District Court judge found for Stop & Shop on counts alleging conversion and deceit, but for the Loomers on counts against them under G. L. c. 93A, § 11. Neither Stop & Shop nor the Loomers claimed a report to the Appellate Division of the District Court. The Loomers did, however, request that the case be retransferred to the Superior Court pursuant to G. L. c. 231, § 102C.[3]

There, Stop & Shop moved for summary judgment on all its claims and supported its motion with a copy of the District Court decision and discovery material presented to the District Court.[4] Relying on the prima facie effect of the District Court

---

[2]An earlier criminal action against Karen was unsuccessful.

[3]The statute provides in pertinent part that "[a]ny party to the transferred action *aggrieved* by the finding or decision [of the District Court] may as of right have the case retransferred for determination by the [S]uperior [C]ourt" (emphasis supplied). G. L. c. 231, § 102C, inserted by St. 1978, c. 478, § 262. Neither party has briefed the question whether the Loomers' request for retransfer of "the case" also brought to the Superior Court so much of the District Court decision as was in their favor on the counts under c. 93A. Consequently, we also pass over this question.

[4]This included excerpts from Richard's deposition, Richard's admissions deemed to have been made pursuant to the second paragraph of Mass.R.Civ.P. 36(a), 365 Mass. 795 (1974), and Karen's answers to Stop & Shop's request for admissions.

judgment in their favor on the c. 93A counts, the Loomers failed to oppose Stop & Shop's motion for summary judgment.

Subsequently, a Superior Court judge allowed Stop & Shop's summary judgment motion on the stated basis that the Loomers "admittedly engaged in illicit activity to convert funds of Stop & Shop for use in their business," activity which was, "[a]s a matter of law, . . . an unfair and deceptive practice proscribed by [G. L. c.] 93A." Following a hearing on Stop & Shop's motion for an assessment of damages, another judge awarded Stop & Shop treble damages, interest, and counsel fees.

Suitably alerted to the gravity of the situation, the Loomers moved for reconsideration of the order that established their liability under G. L. c. 93A, asserting that entry of summary judgment against them was based on errors of law. When that motion was denied, they moved for relief from judgment pursuant to Mass.R.Civ.P. 60(b)(1), 365 Mass. 828 (1974), and Mass. R.Civ.P. 60(b)(6), 365 Mass. 829 (1974), reiterating that the summary judgment order was based on errors of law and, further, arguing that they had relied on the "presumptive weight" of the District Court finding in their favor in not opposing Stop & Shop's motion. This motion was also denied.

The matter comes before us on the Loomers' appeal from the orders denying their motions for reconsideration and for relief from judgment. The Loomers do not appeal from the entry of judgment on the counts for conversion and deceit, but only from those based on G. L. c. 93A, § 11.

The Loomers' failure to oppose Stop & Shop's motion under Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974), would entitle Stop & Shop to summary judgment only upon a showing that no material facts were in dispute, see *Niemi* v. *GenRad, Inc.*, 20 Mass. App. Ct. 948, 949 (1985), *and* that Stop & Shop was entitled to judgment as matter of law. See *Highlands Ins. Co.* v. *Aerovox, Inc.*, 424 Mass. 226, 232 (1997). However, upon the retransfer of a case from the District Court to the Superior Court, the District Court decision constitutes "prima facie evidence upon such matters as [were] put in issue by the pleadings" in that court. G. L. c. 231, § 102C, inserted by St. 1978, c. 478, § 262. See *O'Brion, Russell & Co.* v. *LeMay*, 370 Mass.

243, 244 (1976); *Cole* v. *New England Mut. Life Ins. Co.,* 49 Mass. App. Ct. 296, 297 (2000). Standing alone, that decision constitutes evidence sufficient to warrant a verdict or finding in the Superior Court in favor of the Loomers on Stop & Shop's c. 93A claims regardless of any other evidence introduced by it. See *Eisenberg* v. *Phoenix Assn. Mgmt., Inc.,* 56 Mass. App. Ct. 910, 911 (2002), and cases cited therein. Although a fact finder is free *at trial* to disregard the decision of the District Court if additional evidence so warrants, see *Mongeau* v. *Borlen,* 11 Mass. App. Ct. 1031, 1032 (1981), such is not the case when a Superior Court judge is ruling on a motion for summary judgment, even one that is unopposed.

Notwithstanding the Loomers' failure to oppose Stop & Shop's summary judgment motion in Superior Court, we consider the merits of their appeal from the determination of their liability under G. L. c. 93A. Even were we to conclude that the District Court decision in their favor did not excuse the Loomers' failure to oppose Stop & Shop's motion for summary judgment, the circumstances before us present a situation in which an injustice would result were we to decline to exercise our discretion to consider the question on the merits. See *Clark* v. *Trumble,* 44 Mass. App. Ct. 438, 440-441 (1998), and authorities cited therein, including Mass.R.Civ.P. 56(c). See also *McLeod's Case,* 389 Mass. 431, 434 (1983), citing *Hormel* v. *Helvering,* 312 U.S. 552, 557 (1941) (discretion exercised sparingly and reserved for situations where an "injustice might otherwise result"). The record, which provides an adequate basis for resolution of the issue, convinces us that the Superior Court judge erred in concluding that G. L. c. 93A, § 11, is applicable in the circumstances. See *Nuclear Metals, Inc.* v. *Low-Level Radioactive Waste Mgmt. Bd.,* 421 Mass. 196, 209 (1995). Indeed, as matter of law, the Loomers' conduct does not amount to a violation of G. L. c. 93A, § 11.[5] Accordingly, we reverse and order entry of judgment for the Loomers on the counts brought under G. L. c. 93A, § 11.

---

[5]Our determination has no effect on the judgment in favor of Stop & Shop on its claims against the Loomers for conversion and deceit. We leave undisturbed that portion of the judgment that provides Stop & Shop with recovery of its out-of-pocket losses and interest thereon.

2. *The facts.* We examine the facts in the light most favorable to Stop & Shop, the party against whom we now order summary judgment. The R.J. Loomer Company (company) is an unincorporated general contracting business owned and operated by Richard. Richard used a payroll service company, Genesis, to prepare the company's payroll checks. Genesis would not accept a check in exchange for prepared payroll checks unless a client had an amount equal to twice the monthly payroll in an escrow account. Richard did not maintain an escrow account. Consequently, Genesis required cash up front.

On or about February 25, 1994, Richard needed payroll checks. Although Richard had deposited a check from Santoro Associates, Inc. (Santoro), dated February 24, 1994, in the amount of $3,373, into his and Karen's personal checking account, it would take at least two days before that check cleared and those funds would be credited and available. Until the Santoro check cleared, the balance in their personal checking account, about $2,000 to $3,000, was insufficient to fund the sums needed for the payroll checks.

Richard went to Stop & Shop where Karen was employed as a cash office clerk and, with her assistance, cashed several checks drawn on their joint personal checking account in an amount totaling $5,185. He then gave the cash to Genesis in exchange for company payroll checks. Although the Loomers were aware that the funds in their checking account were insufficient to cover the checks cashed at Stop & Shop, they hoped that by the time the personal checks cashed at Stop & Shop were presented for collection, the Santoro check would have cleared.

Although Stop & Shop had a company policy that prohibited cashing of an employee's personal checks, in the course of her employment with Stop & Shop, Karen had cashed personal checks for Richard on other occasions during the period of 1992 to 1994. "Some or all" of those checks had been returned for insufficient funds.[6]

3. *The c. 93A determination.* Section 11 of G. L. c. 93A, inserted by St. 1972, c. 614, § 1, provides in pertinent part:

---

[6]The only checks at issue in the present action are those cashed on February 25, 1994.

"Any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice . . . may, as hereinafter provided, bring an action . . . ."[7]

We conclude that Richard's negotiation at Stop & Shop of checks drawn on his and Karen's joint personal checking account does not amount to his use or employment of unfair or deceptive acts or practices in trade or commerce in violation of G. L. c. 93A, § 11, *even though* both Richard and Karen knew that there were insufficient funds in the account at the time, and *even though* they intended to use the monies obtained to keep Richard's (or Richard and Karen's) contracting business afloat.[8]

At the outset, we note that this case does not concern an unfair method of competition between two competing business entities. Rather, we deal with that branch of the statute that prohibits the use or employment of an unfair or deceptive act or practice by a person engaged in trade or commerce. Liability under that branch of G. L. c. 93A, § 11, "requires that there be a commercial transaction between a person engaged in trade or

---

[7]Section 2 proscribes "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." G. L. c. 93A, § 2, inserted by St. 1967, c. 813, § 1.

The terms "trade" and "commerce" are defined in G. L. c. 93A, § 1(*b*), as amended by St. 1987, c. 664, § 1, which provides in full:

> " 'Trade' and 'commerce' shall include the advertising, the offering for sale, rent or lease, the sale, rent, lease or distribution of any services and any property, tangible or intangible, real, personal or mixed, any security as defined in subparagraph (*k*) of section four hundred and one of chapter one hundred and ten A and any contract of sale of a commodity for future delivery, and any other article, commodity, or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this Commonwealth."

[8]Because we decide the case on this ground, we need not consider Karen's separate contention that her actions are also not within the ambit of G. L. c. 93A, § 11, because, as an employee of Stop & Shop, her conversion of company assets would be an intra-enterprise occurrence and not a commercial transaction within the meaning of that statute. See *Linkage Corp.* v. *Trustees of Boston Univ.*, 425 Mass. 1, 22-23 & n.33, cert. denied, 522 U.S. 1015 (1997).

commerce [and] another person engaged in trade or commerce."
*Szalla* v. *Locke*, 421 Mass. 448, 451 (1995). The inquiry is two-
fold: only after it has been established that a "commercial
transaction" exists does the court address whether the individu-
als were acting in a "business context" and apply the business
context test discussed in *Begelfer* v. *Najarian*, 381 Mass. 177,
190-191 (1980). See *Linkage Corp.* v. *Trustees of Boston Univ.*,
425 Mass. 1, 22-23, cert. denied, 522 U.S. 1015 (1997).

We assume, without deciding, that Richard's cashing of
checks in Stop & Shop's cash office is a "commercial transac-
tion" in the sense required by G. L. c. 93A. See *Szalla* v. *Locke*,
421 Mass. at 451-452.[9] However, those transactions fail the
second prong of the two-part test: the parties were not "engaged
in trade or commerce" with each other and therefore acting in a
"business context." See *Linkage Corp.* v. *Trustees of Boston
Univ.*, *supra* at 23-24. To be actionable under G. L. c. 93A,
§ 11, the conduct complained of must occur in a context in
which the parties to the transaction are persons engaged in
"trade or commerce" with each other and therefore "acting in a
business context." *Id.* at 23. Each case requires examination of
its own circumstances to determine whether it arose in a "busi-
ness context." *Id.* at 24.

That Stop & Shop is engaged in "trade or commerce"[10] and
suffered loss of money is not contested. Nor is it open to dispute
that engaging in a general contracting business constitutes
"trade or commerce." We assume, further, that knowingly cash-
ing checks drawn on insufficient funds is an unfair or deceptive
act or practice.

Nevertheless, when measured against the "business context"
test of *Begelfer* v. *Najarian*, 381 Mass. at 190-191,[11] the Loomers'

---

[9]Of course, broadly viewed, cashing a check is a commercial act governed
by the law of commercial transactions. It is less clear, however, whether the
instant transaction, which involved Richard's use of Karen's inside position at
Stop & Shop, has the arm's-length characteristic of a "commercial transac-
tion" regulated by the statute. See *Linkage Corp.* v. *Trustees of Boston Univ.*,
425 Mass. at 23.

[10]We assume, notwithstanding Stop & Shop's policy against cashing checks
for employees, that the cashing of checks for Richard as well as for the
convenience of customers is "trade or commerce" within the meaning of
G. L. c. 93A.

[11]The *Begelfer* "business context" test requires "assess[ing] the nature of

activities do not constitute engaging in "trade or commerce" with Stop & Shop for purposes of § 11 liability. Rather, these activities are a private transaction beyond the reach of the statute. See *id.* at 191.

Undeniably, Richard was not engaged in general construction services for Stop & Shop. Nor was he purchasing large quantities of construction supplies for his business. The check-cashing transaction was not business-to-business; nor did business-to-business communications or negotiations precede the transaction. Richard merely presented personal checks and obtained money in return. In advancing the money, Stop & Shop did not rely on any business actions or representations by Richard in his capacity as a general contractor. Because these indicia denote purely private, and not business-to-business, transactions, we attach little, if any, significance to the fact that Richard had cashed other such checks on previous occasions. In these circumstances, we are also unpersuaded that Richard's motivations bear any relevance to determining whether the transactions occurred in a business context. We fail to discern how Richard's intention to use the funds obtained for his general contracting payroll, as opposed to for vacation or other purely personal pursuits, transforms his activity into engaging in "trade or commerce" and acting in a "business context" with Stop & Shop.

That cashing checks was not part of the ordinary course of Richard's general contracting business is not dispositive, but also need not be ignored. See *Begelfer* v. *Najarian*, 381 Mass. at 191 ("We do not read § 11 as requiring that a commercial transaction must take place only in the ordinary course of a person's business or occupation before its participants may be subject to liability under G. L. c. 93A, § 11"); *Gargano & Assocs., P.C.* v. *John Swider & Assocs.*, 55 Mass. App. Ct. 256, 263 (2002). Contrast *Linkage Corp.* v. *Trustees of Boston Univ.*, 425 Mass. at 23 n.33 (c. 93A not available to parties in a strictly private transaction where "undertaking is not in the ordinary course of a trade or business" [citation omitted]). It cannot be

the transaction, the character of the parties involved, and the activities engaged in by the parties. Other relevant factors are whether similar transactions have been undertaken in the past, whether the transaction is motivated by business or personal reasons . . . and whether the participant played an active part in transaction." (Citation omitted.) *Begelfer* v. *Najarian*, 381 Mass. at 191.

gainsaid that in cashing checks at Stop & Shop, Richard would ostensibly be no different from any store customer who tendered a check at the courtesy window.[12] Along the spectrum between purely private activities and those constituting "trade or commerce," this undertaking is a private transaction, not related to Richard's general contracting business or to the conduct of any trade or commerce with Stop & Shop. Missing from this case is the requisite connection between the use or employment of an unfair or deceptive act or practice, and a trade or commerce in which Richard engaged with Stop & Shop. It is not enough that a defendant be engaged in trade or commerce and that he employ unfair or deceptive acts or practices on another business person with whom he was not engaged in trade or commerce. Rather, the unfair or deceptive act or practice must occur in the context of a trade or commerce in which the defendant engages with the plaintiff.

As stated in *Manning* v. *Zuckerman*, 388 Mass. 8, 10 (1983):

> "[Section] 11 of G. L. c. 93A was intended to refer to individuals acting in a business context in their dealings with other business persons and not to every commercial transaction whatsoever. *Lantner* v. *Carson*, 374 Mass. 606, 611 (1978). *Nader* v. *Citron*, 372 Mass. 96, 97 (1977). *PMP Assocs.* v. *Globe Newspaper Co.*, 366 Mass. 593, 595 (1975)."

Here, the pivotal question is whether the prohibited acts or practices took place in the context of the Loomers engaging in trade or commerce with Stop & Shop. In these circumstances the loss arose not because of an unfair or deceptive act or practice in trade or commerce between business persons, but because an ordinary and entirely fungible consumer cashed checks drawn on insufficient funds. While actions for deceit and conversion afford a remedy, an action for violation of G. L. c. 93A, § 11, does not. At bottom, this case involves a garden variety instance of an individual passing checks drawn on insuf-

---

[12]That the checks were personal checks is not dispositive. We would discern no material difference even had the checks been drawn on an R.J. Loomer business checking account.

ficient funds in the hope of obtaining money to which he would not otherwise be entitled. This simply does not add up to a "commercial transaction" in which that individual is "engaged in trade or commerce" for purposes of G. L. c. 93A, § 11.

4. *Conclusion.* The judgment entered in favor of Stop & Shop and against the Loomers on counts 1, 2, 4, and 5 for conversion and deceit is affirmed. The judgment entered in favor of Stop & Shop and against the Loomers on counts 8 and 9 for violation of G. L. c. 93A, § 11, is reversed and those counts are remanded to the Superior Court with an order that judgment be entered in favor of the Loomers on Stop & Shop's claims for violations of G. L. c. 93A, § 11.

*So ordered.*

PERRETTA, J. (dissenting). Because my reading of the materials presented by the Stop & Shop Supermarket Company (Stop & Shop) on its motion for summary judgment leads me to conclude that none of the parties is entitled to summary judgment on the G. L. c. 93A, § 11, counts, I respectfully dissent.

1. *The procedural issue.* In part one of the decision, the majority discusses those circumstances that allow us to exercise our discretion to take up the Loomers' arguments notwithstanding their failure to oppose Stop & Shop's motion for summary judgment.[1] One of the circumstances the majority considers is its conclusion that, as matter of law, the Loomer's conduct did not violate § 11.

Although I agree with the majority's conclusion that on the circumstances presented we should allow the Loomers to chal-

---

[1]Although the Loomers make their arguments under the cloak of appeals from the denials of their postjudgment motions, neither my view nor that of that majority rests on those rulings. Were we to consider the Loomers' arguments on the basis of those rulings, we would most likely conclude that the Superior Court judge was under no obligation to reconsider his allowance of Stop & Shop's motion for summary judgment, especially when the Loomers did not oppose the motion for summary judgment in the first instance and then waited for a week from the assessment of damages (and nearly four months after the ruling on the motion for summary judgment) to seek reconsideration and almost three weeks more before seeking postjudgment relief.

lenge the judgment against them, I do not agree that one of the circumstances permitting us to consider the Loomers' arguments is that the Loomers are entitled to judgment as matter of law. Rather, I would allow the Loomers to proceed with their appeal for the following five reasons: (1) the prima facie effect of the favorable District Court decision was sufficient to defeat Stop & Shop's motion for summary judgment; (2) the mistaken belief of the Loomers' attorney that the prima facie effect of the District Court decision made it unnecessary for him to respond to the motion; (3) Richard Loomer's deposition testimony and Karen Loomer's response to Stop & Shop's request for admissions, see Mass.R.Civ.P. 36(a), 365 Mass. 795 (1974), in which they both stated that upon the return of their personal checks to Stop & Shop, they offered a certified check in the total amount of the five returned checks but that Stop & Shop refused to accept it; (4) the amount of the checks in issue, $5,185, and the amount of recovery awarded to Stop & Shop as of the date of the judgment, about $30,000[2]; and (5) Stop & Shop's inability to claim surprise or lack of opportunity to respond to the Loomers' arguments.[3]

2. *The Superior Court judge's ruling.* In taking up the questions raised by the Loomers on their appeal, I examine the facts set out in the materials put before the Superior Court judge by Stop & Shop in support of its motion for summary judgment. I do so initially in the light most favorable to the Loomers, the party against whom summary judgment was sought in the Superior Court. Although Stop & Shop alleged in its complaint that Karen "violated company policy by cashing personal checks for [Richard], which she knew to have been drawn from an account containing insufficient funds to cover the checks," both Karen and Richard, in their answer, denied that allegation. Other than Stop & Shop's allegation and the Loomers' denial, there is nothing in the record concerning this policy. Moreover, Karen denied that when she cashed checks for Richard in 1992,

---

[2]The judgment entered against the Loomers provided Stop & Shop with treble damages, interest on its actual damages, and $15,000 in attorney's fees.

[3]The Loomers first made the arguments now before us in their postjudgment motions, see note 1, *supra*, to which Stop & Shop responded with memoranda in opposition. Moreover, Stop & Shop addressed the Loomers' arguments in its brief and at oral argument before us.

1993, and 1994, she knew there were insufficient funds in their account to cover the checks. Richard, however, admitted in his deposition that he knew there were insufficient funds in the account when he wrote the checks at issue here, but hoped that before their personal checks were presented for collection, a check from a third party that he had deposited in their account (Santoro check) would have cleared.

In view of the prima facie effect of the District Court decision and the facts taken in a light favorable to the Loomers, I conclude that the Superior Court judge was in error in allowing Stop & Shop's motion for summary judgment on the c. 93A claims.

3. *Counterstatement of the facts.* In concluding that the Loomers are entitled to summary judgment, the majority states that it takes the materials in the record appendix in the light most favorable to Stop & Shop. I therefore adopt this standard for the remainder of my analysis. In my view the majority proceeds on the basis of what I perceive to be an unwarranted acceptance of Richard's deposition testimony and Karen's responses to Stop & Shop's rule 36(a) request for admissions to reach the conclusion urged by Richard, that is, even if his acts were unfair and deceptive, he did not violate § 11. My examination of the materials in the record in the light most favorable to Stop & Shop shows what I determine to be important unresolved questions of fact.

The record discloses that the Santoro check was dated February 24, 1994, and that the eight checks in issue, totaling $5,185, although written and cashed on the same day, February 25, 1994, carried three different but consecutive dates, February 25, 26, and 27, 1994. There is, however, nothing in the materials to show either the date of deposit of the Santoro check or the actual date on which Richard wrote the eight checks.

Richard testified at his deposition that when he went to Karen at Stop & Shop to obtain the cash he needed to procure his payroll checks from Genesis, he knew that there were insufficient funds in his joint account with Karen, that it would take the bank at least two days from the unstated date of deposit of the Santoro check to collect those funds, that he wrote the eight checks showing different dates on the same unstated day, that

Karen had instructed him to split the total amount of cash he needed into a number of smaller amounts rather than present one check for the total amount, and that he did so in the belief that by the time the checks were presented for collection, the Santoro check would have cleared.

Karen denied having any interest in the R.J. Loomer Company, that she was acting for the benefit of Richard or the company when she cashed checks for Richard, or that she had concealed from Stop & Shop the fact that from 1992 through 1994, some of Richard's checks had been returned for insufficient funds. She admitted, however, on September 23, 1996 (the date of her response to Stop & Shop's request for admissions), that she, Richard, and the R.J. Loomer Company had shared the same address "at one time or another in the past," and that Richard and the company "are one [and] the same."

There is also the important and undisputed fact that the return of the checks in issue was not a one-time incident. Both Richard and Karen acknowledged that over a span of two to three years, Karen had used Stop & Shop funds to cash checks for Richard which were dishonored and returned to Stop & Shop.

I conclude that these facts reasonably could be found to support a finding that Richard and Karen, since 1992, had been using Stop & Shop funds on an "as needed" basis to protect or further their or Richard's interest in the R.J. Loomer Company.

4. *Discussion.* The majority concludes that, even assuming Richard's cashing of the checks in Stop & Shop's cash office is a "commercial transaction," *Szalla* v. *Locke*, 421 Mass. 448, 451-452 (1995), Richard and Stop & Shop were not engaged in trade or commerce with each other and, therefore, were not acting within a business context. Based on that conclusion, the majority also decides that it is unnecessary to consider Karen's separate contention, that as a Stop & Shop employee her conversion of its funds was an intra-enterprise event and not a commercial transaction. See note 8, *ante.*

There is nothing in the plain language of either G. L. c. 93A, § 1(*b*), defining the terms "[t]rade and commerce," or that of § 11 (see *ante* at 173-174 and note 7), providing a business with a cause of action against another business that engages "in an unfair or deceptive act or practice" and causes it a loss of

money, that limits the statute's remedial provisions to businesses engaged in trade or commerce *with each other*. As stated in *National Lumber Co.* v. *United Cas. & Sur. Ins. Co.*, 440 Mass. 723, 727 (2004):

> "Statutory language is the primary source of legislative intent. *Hoffman* v. *Howmedica, Inc.*, 373 Mass. 32, 37 (1977). Where the language is plain and unambiguous, it is conclusive of the Legislature's purpose. *Pyle* v. *School Comm. of S. Hadley*, 423 Mass. 283, 285 (1996), and cases cited. We do not 'read into the statute a provision which the Legislature did not see fit to put there, whether the omission came from inadvertence or of set purpose.' *General Elec. Co.* v. *Department of Envtl. Protection*, 429 Mass. 798, 803 (1999), quoting *King* v. *Viscoloid Co.*, 219 Mass. 420, 425 (1914)."

See *Thomas* v. *Department of State Police*, 61 Mass. App. Ct. 747, 752-753 (2004). Both Richard and Stop & Shop were engaged in business, albeit not with each other; Stop & Shop cashed checks in conducting its business; and Richard cashed checks necessary to meet the payroll of his business.

Rather than take the plain language of the statute into consideration, the majority bases its conclusion that the Loomers were entitled to summary judgment on its application of the " 'business context' test of *Begelfer* v. *Najarian*, 381 Mass. [177,] 190-191 [(1980)]." *Ante* at 175-176. That test requires consideration of numerous relevant factors set out *ante* at note 11. See Gilleran, The Law of Chapter 93A § 2:1, at 15 (1989), and the cases therein cited. In my view, application of those considerations to the facts shows that the conduct about which Stop & Shop complains was a commercial transaction that could be found to have occurred in a "business context."

While the majority states that its conclusion rests on an application of the *Begelfer* test to the facts taken in the light most favorable to Stop & Shop, I read the opinion differently. In my view, a close reading reveals that the majority decision is based on the conclusion that, as matter of law, a business engaged in trade and commerce which causes another business engaged in trade or commerce a loss of money by reason of an unfair act

or practice is immune from liability under § 11 unless the unfair act or practice complained of occurred in the course of a business-to-business relationship.

Under the majority's analysis, I can think of no situation in which application of the *Begelfer* test would allow a business to seek relief pursuant to § 11 unless the act or practice complained of occurred in a business-to-business context. In other words, I view the majority's decision as being based on a conclusion of law rather than on application of the *Begelfer* factors to the facts; that is, unless the unfair acts or practices occurred in the course of a business-to-business transaction, they will be held to be "purely private" and beyond the reach of the statute. *Ante* at 177.

Not only am I unable to find support for the majority's conclusion in the plain language of G. L. c. 93A, or the so-called *Begelfer* test, I am of the view that its conclusion is contrary to the intent of § 11. See *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688, 695-697 (1975); *Manning* v. *Zuckerman*, 388 Mass. 8, 10 (1983). I can find nothing in the cases cited by the majority that holds otherwise.

The majority's decision leaves business people with lesser rights than those afforded consumers under G. L. c 93A, § 9. Stop & Shop cannot bring an action against the Loomers pursuant to § 9, and as a result of the majority's decision, Stop & Shop is left with only remedies in tort for conversion and deceit for the Loomers' practice of using its funds to further the business of the R.J. Loomer Company at the expense of Stop & Shop. There is little, if anything, in the majority's holding to discourage one business from engaging in unfair acts and practices at the expense of another business with which it was not engaged in a business-to-business transaction.

As I read c. 93A, I discern a legislative intent not only to protect business people from unfair competition, but also to afford them rights comparable to those provided consumers under § 9, that is, to protect people engaged in trade and commerce from "unfair or deceptive acts or practices," G. L. c. 93A, § 2(a), of other people engaged in trade or commerce. See *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. at 696-697; *Manning* v. *Zuckerman*, 388 Mass. at 10.

Therefore, I must respectfully disagree with my colleagues and conclude that Richard is not entitled to summary judgment against Stop & Shop. Before determining whether Richard is entitled to judgment, I would require a judge or jury to resolve what I perceive to be important and unresolved questions of fact. See *Begelfer* v. *Najarian*, 381 Mass. at 191. See also Gilleran, *supra*.

My conclusion requires that I also consider Karen's argument that even if her actions are found to be unfair and deceptive within the scope of § 11, they cannot be found to have occurred in the context of a commercial transaction. Her argument is premised on the undisputed fact of her employment relationship with Stop & Shop. See *Linkage Corp.* v. *Trustees of Boston Univ.*, 425 Mass. 1, 23 n.33, cert. denied, 522 U.S. 1015 (1997).

Stop & Shop counters with the argument that Karen's conversion of its funds is within the comprehension of § 11 because her acts were "independent of her employment relationship" and for the sole benefit of Richard's company.[4] More specifically, Stop & Shop's § 11 allegations against Karen are to the effect that she, in her position as cash office clerk, violated Stop & Shop policy by cashing personal checks for Richard drawn on their joint account, that each of the checks was for a substantial amount and written according to her instructions, and that she did so not as an employee acting within the scope of her employment but for the benefit of a different company in which she had an interest. Although Karen denied these allegations both in her answer to the complaint and in her responses to Stop & Shop's request for admissions, the District Court decision in Stop & Shop's favor on its conversion and deceit (intentional torts) claims is prima facie evidence of wrongdoing on her part.

The record shows that Stop & Shop sought summary judgment in 2003 on the basis of discovery materials obtained in

[4]Stop & Shop also argues that we are bound by the Superior Court judge's statement in his summary judgment order that the Loomers "admittedly engaged in illicit activity to convert funds of Stop & Shop for use in their business." Even had the Superior Court judge intended that statement as a finding of fact, it is without undisputed support in the summary judgment materials before us. See *New England Canteen Serv., Inc.* v. *Ashley*, 372 Mass. 671, 675 (1977).

1996. Because Karen failed to respond to the summary judgment motion, and in light of the prima facie effect of the District Court decision regarding her intentional torts against Stop & Shop, there was no further exploration of how far outside the scope of her employment Karen could reasonably be found to have acted before becoming liable under § 11.

Left unanswered are questions concerning the employment obligations and responsibilities of a Stop & Shop "cash office clerk," the terms of Stop & Shop's policy concerning the cashing of checks presented to Karen by Richard and drawn against their joint account, and the extent of her personal interest in the R.J. Loomer Company.

I am reluctant to reward Karen for her failure to respond to Stop & Shop's motion by simply concluding on the record before us that as an employee of Stop & Shop, she has blanket immunity from liability under § 11 for acts that are not simply unfair but that are intentional torts. On the facts and circumstances presented, I think it inappropriate, if not wrong, to hold Stop & Shop to a record that fails, through no fault of Stop & Shop, to disclose facts in support of its contention that Karen is not entitled to summary judgment on the sole basis that she was an employee of Stop & Shop at the time of her commission of intentional torts.

6. *Conclusion.* For the above stated reasons, and with all respect due the majority, I would reverse the summary judgment entered against Richard and Karen Loomer on those counts brought under G. L. c. 93A, § 11, that is, counts 8 and 9, and remand those counts to the Superior Court for further proceedings.